429 P.2d 702

**Josephine ANGUIS, Petitioner,**

v.

**The SUPERIOR COURT of Arizona IN AND FOR the COUNTY OF MARICOPA and the Honorable Thomas Tang and John Vanlandingham, Judges Thereof, Respondents,**

**Robert Corbin, Maricopa County Attorney, Maricopa County Welfare Department, Real Party In Interest.**

**No. 1 CA–CIV 598.**

Court of Appeals of Arizona.
July 7, 1967.

Arnold M. Sodikoff, Maricopa County Legal Aid Society, Phoenix, for petitioner.

Robert K. Corbin, Maricopa County Atty., by H. Louis Hiser, Deputy County Atty., for respondents.

**70**

CAMERON, Chief Judge.

This is a petition for a writ of prohibition by Josephine Anguis, mother of _____, age 3, asking this Court to restrain the Superior Court of Maricopa County and the Juvenile Judge thereof from conducting a hearing wherein it is asked that the petitioner "appear and show cause, if any she may have, why her parental rights to _____ should not be severed."

■ After hearing upon petitioner's application for a writ of prohibition we ordered the respondents enjoined and restrained from further proceedings in relation to the petition filed in the trial court and directed that the parties hereto submit memoranda of authority to this Court on the legal and factual situation. There being no adequate remedy at law, prohibition is a proper remedy. Ginn v. Superior Court, 1 Ariz.App. 455, 404 P.2d 721 (1965), Caruso v. Superior Court, 100 Ariz. 167, 412 P.2d 463 (1966).

The facts necessary for a determination of this matter are as follows. _____ was born out of wedlock to Josephine Anguis in 1963. The present whereabouts of the natural father is unknown. On 17 March 1964 a child welfare supervisor of the Maricopa County Department of Public Welfare filed a petition with the Superior Court of Maricopa County alleging that the child was in need of the care and protection of the Juvenile Court. On 18 March 1964 hearing was held before the Juvenile Judge of Maricopa County and after a finding by the court that the child was a dependent child within the meaning of the statute, it ordered that the child be released by the Maricopa County Hospital and "made a ward of the court committed to the care, custody and control of Maricopa County Department of Public Welfare for planning". On 20 May 1964 another hearing was held before the Juvenile Judge of Maricopa County with the same finding and result at which time the Child Welfare Supervisor, a case worker of the Maricopa County Department of Public Welfare, and Mrs. Josephine Anguis, mother of the child and petitioner, were present.

Still another hearing was held on 29 June 1966 at which time Mrs. Anguis was also present, and after the hearing the court entered the following order:

"IT IS ORDERED that _____ remain a ward of the court, committed to the care, custody and control of the Maricopa County Department of Public Welfare for planning.

"IT IS FURTHER ORDERED that the legal file be made available to the County Attorney for severance of parental rights."

On 8 August 1966 a notice and order to show cause was signed by the Juvenile Judge of Maricopa County ordering the petitioner to appear before the Juvenile Division of the Maricopa County Superior Court on Wednesday, 19 October 1966, to then and there,

"show cause, if any you have, why an order should not be made and entered by this court terminating your parental rights, if any you have, over said _____, and committing said child to the care, custody, and control and guardianship of the Maricopa County Department of Public Welfare for the purpose of placing said child for adoption, and consenting to the adoption without further notice to you; * *"

The court further ordered that service of this notice and order be made upon the petitioner and all other persons interested by publication in the Arizona Weekly Gazette. The prayer of the petition by the County Attorney's office stated:

"WHEREFORE, petitioner prays the court to issue forthwith notice and Order to Show Cause directing Josephine Anguis to appear and show cause, if any she may have, why her parental rights to _____ should not be severed."

Petitioner appeared on 19 October 1966 and indicated to the court that she did not understand the nature of the hearing and expressed her desire to have counsel. The court

referred petitioner to the Maricopa County Legal Aid Office to obtain counsel to represent her and continued the matter. Counsel was obtained and a motion to dismiss the petition was filed. The court denied the motion to dismiss and petitioner brought this writ seeking to prohibit the Superior Court of Maricopa County, Juvenile Division, from proceeding further upon the petition of the County Attorney for severance of petitioner's parental rights. It is the contention of the respondent Maricopa County Attorney that the reason for severing the parental right is to prepare the way for the placement of the child for adoption.

The question presented to this Court by petitioner is stated thusly:

"Does the Juvenile Court have the jurisdiction to sever parental rights as to children * * * in such manner that a child may be placed for adoption by an agency without notice to the natural parents?"

Or stated differently:

"May the Juvenile Court sever parental rights when no adoption proceedings are presently pending?"

Petitioner points out that we are not concerned in this case with the custody or possession of the child. There is no doubt that the Juvenile Court had the right to place this child with a proper agency for foster care after a finding that the child was a dependent child and that the welfare of the child demanded this be done. Insofar as the term "parental rights" includes the right to care, custody and control by the parent there is no question that these "rights" may be temporarily or permanently terminated by the Juvenile Court, A.R.S. § 8-231, subject to proper notice to the said parent. A.R.S. § 8-224. Application of Gault, 99 Ariz. 181, 407 P.2d 760 (1965). See also Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

We are faced here with the limited question of whether or not the Juvenile Court may conduct a hearing and sever the parental rights of a parent to a child without there first being a pending adoption. Before we consider this matter we must consider the meaning of the term "parental rights". The rights of a parent regarding its child are quite often confused with parental obligations or the rights of the child to care, custody, support, inheritance and other obligations from the parent to the child. Our statute A.R.S. § 14-206, for example, provides that every child is entitled to support and education from its natural parents. As used herein we construe the term "parental rights" in the broader term as the sum total of the rights of the parent or parents in and to the child as well as the rights of the child in and to the parent or parents. In other words, we construe parental rights to include both parental rights and parental obligations.

The relation of parent and child is not a property right but a status which, nevertheless, may not be changed by the state without due process and compliance with the statutes involved. It has been stated:

"While the right of the natural parents to the custody of their children is not a proprietary right in the same sense as if the child were a chattel, it has ever been regarded, even in primitive civilization, as one of the highest of natural rights * * *." 2 C.J.S. Adoption of Children § 21, pages 383, 384.

The welfare of the child is paramount in all cases involving children:

"Thus it is, we think, with respect to the termination of parental rights as well as with respect to the entry of an order of adoption and an order of custody, that the prime and overriding consideration is always what best serves the interest of the child." Cline v. Hartzler, Del., 227 A. 2d 210, 212 (1967).

Even so, the court must have jurisdiction to grant the relief before it may enter an order terminating a relationship as vital as parental rights between parent and child.

The courts have generally treated adoption, parental rights and custody mat-

ters differently and then only where it is clear that the jurisdiction lies to interfere with that particular relationship. Adoption, which generally severs all rights and corresponding obligations between the parent and the child, was unknown at common law and exists as a creature of statute which must be strictly construed. In re Webb's Adoption, 65 Ariz. 176, 177 P.2d 222 (1947). The only mention in our statutes of the termination of parental rights is contained in the code section on adoption. A.R.S. § 8–103 states:

"Consent to Adoption; * * *

"A. Before the court may enter an order for the adoption of a minor, the provisions of this section which are applicable to the proceedings shall be observed:

"1. Consent to the adoption shall be obtained from the individuals or agencies found capable of giving consent under the following circumstances: * * * (c) A guardian of the child appointed in a separate proceeding, with authority to consent to adoption, if neither parent is living, or both parents have been legally declared insane or incompetent, or the *parental rights* of both parents have been divested as provided by law. * * *

(d) The parent whose rights have not been divested or relinquished, if the *parental rights* of one of the parents have been divested or relinquished in a lawful manner." A.R.S. § 8–103. (emphasis ours)

Our statute also states:

"A. * * * Upon entry of the final order of adoption, the relationship of parent and child shall be established between the adopting parent and the child, and if the order so provides, the child shall assume the surname of the adopting parent. Upon the entry of the final order of adoption the child shall, effective as of the date of the entry of interlocutory order of adoption be an heir of the adopting parent and entitled to all the rights and privileges and subject to all the obligations of a child of full blood and heir at law born to such adopting parent in lawful wedlock. *Effective as of the date of entry of the final order of adoption,* the child shall no longer be the child or heir of the natural parents or entitled to any of the rights and privileges or subject to any of the obligations of a child of its natural parents." A.R.S. § 8–108. (emphasis ours)

The section mentioning parental rights was first put into our laws in 1952 by the 20th Legislature and was taken from the Oregon Revised Statutes, O.R.S. 109.320. Prior to the amendments of the laws in 1952 our statute did not contain the term "parental rights". In adopting portions of the Oregon statute, O.R.S 109.320,[1] the Arizona legislature failed to provide wherein "parental rights" might be "divested as provided by law". A.R.S. § 8–103. The Oregon statute does provide for a termination of parental rights and reads in part as follows:

"Termination of Parental Rights; Grounds.

"1. The parental rights of the parents of a child within the jurisdiction of the juvenile court as provided in subsection 1 of O.R.S. 419.476 may be terminated as provided in this section and O.R.S. 419.-525. * * *" 419.523 O.R.S.

1. "1. The parents of the child, or the survivor of them, shall, except as provided in subsections (1), (2), (3), (6) and (7) of this section and in O.R.S. 109.330, consent in writing to the adoption of the child. If neither parent is living, the guardian of the child may give such consent; if there is no guardian, the next of kin in this state may do so; if there is no such next of kin, the court may appoint some suitable person to act in the proceedings as next friend of the child to give or withhold such consent; provided, that in case the child is illegitimate, the consent of the mother is sufficient; and in case the mother is dead or unknown, the provisions above mentioned applicable in case neither parent is living, apply." O.R.S. 109.320.

And O.R.S. 419.525 provides for the procedure for termination of parental rights:

"1. * * * The summons shall contain a statement to the effect that the rights of the parent or parents are proposed to be terminated in the proceeding. The statement may be made in the summons originally issued in the proceeding or in separate summons issued at any subsequent stage of the proceeding." O.R.S. 419.525.

It should be noted that the previous Oregon statutes as far back as 1919 provided for temporary and permanent commitments, Section 93–610, Oregon Compiled Laws Annotated, and the provisions of Section 93–611, Oregon Compiled Laws Annotated, passed in 1937, provided for service upon the parents to show cause why the child named should not be "committed temporarily or permanently, with authority to consent to adoption, to the care of some authorized child-caring agency".

■ Although our reasoning admittedly relies upon the definitions of "parental rights" set forth in this opinion, still we do not believe that the legislature contemplated a proceeding wherein all the rights and obligations between a parent and child could be severed without there being a pending adoption. Our statutes do provide that there may be a change of custody, A.R.S. §§ 8–225 and 8–231, and the parent's right to consent to an adoption may be taken away, A.R.S. § 8–104, but the only place in our statute which provides for a complete termination of rights and obligations between a child and its natural parents—that is, a termination of "parental rights"—is in the adoption proceeding and then only with the final decree of adoption. A.R.S. § 8–108:

"Furthermore, until the final order of adoption is entered, a minor child is still the child of the natural parents; it is only the final order which vests and divests legal rights and duties." In re Adoption of Luke, 3 Ariz.App. 327, 329, 414 P.2d 176 (1966).

■ It is only with the final order of adoption that the natural parent and child sever all rights, obligations and relationships between each other. Up until that time, the natural child still has the right to look to the natural parent for sustenance, inheritance, etc., and the natural parent still has some rights and obligations to the child. We would not agree that the legislature intended that all these rights be severed in a proceeding as in the instant case and have a child placed in a position legally wherein all rights and obligations of the child and the parent between each other would be severed and no adoptive parent would be legally able or required to take the natural parents' place. The child would be placed in limbo, so to speak, dependent entirely upon the state, unable to look to its natural parents and with no adoptive parents to take their place. We do not believe that the legislature envisioned this type of situation. Indeed, our statutes make it perfectly clear that the obligations of the natural parent are not extinguished until the "final order of adoption", and we find no procedure which provides for the termination of parental rights except in the final order of adoption. Had the legislature intended the Juvenile Court to have the power to terminate parental rights outside of our adoption procedure, it seems logical that they would have adopted the Oregon statute on termination at the same time they adopted the Oregon adoption statute.

■ It is contended that the procedure propounded by the respondent serves the best interest of the child in that neither the natural parent nor the adoptive parent will know of the other's identity. It is contended that the best interests of this child will be thus served. Our Supreme Court has stated in speaking of custody:

"Because the child has attained a favored, beneficent status in our social and legal systems does not detract from the well-settled rule that the right of parents to the custody of minor children is both a natural and a legal right. Harper v. Tipple, 21 Ariz. 41, 184 P. 1005, In re Winn, 48 Ariz. 529, 63 P.2d 198. While the right to custody is not absolute be-

cause the parent may be deprived thereof by the state in the best interest and welfare of the child, Dickason v. Sturdavan, 50 Ariz. 382, 72 P.2d 584; Fladung v. Sanford, 51 Ariz. 211, 75 P.2d 685, we are compelled to agree with the Court of Appeals of New York that 'no court can, for any but the gravest reasons, transfer a child from its natural parent to any other person'. People ex rel. Portnoy v. Strasser, 303 N.Y. 539, 104 N.E.2d 895, 896. Moreover:

'The best intentions and the greatest zeal to care for neglected, dependent, or delinquent children do not justify the violation of the constitutional provisions as to due process that are involved in removing a child from the custody of its parent. * * *' In re Godden, 158 Neb. 246, 63 N.W.2d 151, 156." Arizona State Dept. of Public Welfare v. Barlow, 80 Ariz. 249, 296 P.2d 298 (1956).

This should be all the more true where more than custody is involved as here—the parental rights of a natural parent.

 We would agree that in many instances the best interests of the child will be served wherein neither the adoptive parents nor the natural parents know of each other's identity. This appears to be the reason for A.R.S. § 8–104 which does not sever all parental rights and obligations but takes away the right of consent by the natural parent to an adoption. The statute reads:

"Consent; when unnecessary

"An order of adoption may be entered without the consent of the parent or legally appointed guardian when, after hearing, the court determines that the interests of the child will be promoted thereby. In such cases, the court shall make written findings of all facts upon which its order is founded." A.R.S. § 8–104.

The statute requires a hearing and that the court make written findings of fact. The statute has been approved by our Supreme Court and we believe can be invoked to sat-

isfy the requirements of anonymity the welfare representatives desire. Anderson v. Pima County Dept. of Public Welfare, 77 Ariz. 339, 271 P.2d 834 (1954); In re Anonymous, 4 Ariz.App. 588, 422 P.2d 419 (1967).

The writ of prohibition will issue.

STEVENS, J., and LAURENS L. HENDERSON, Judge of the Superior Court, concur.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from consideration of this matter Judge LAURENS L. HENDERSON was called to sit in his stead and participate in the determination of this decision.