No. 46,306

LINDA KANNARD ROELFS, *Appellee*, v. SAM P. WALLINGFORD, INC., and MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, *Appellants*.

(486 P. 2d 1371)

Opinion filed July 16, 1971.

*Byron Brainerd*, of Weigand, Curfman, Brainerd, Harris and Kaufman, of Wichita, argued the cause and was on the brief for the appellants.

*Kenneth E. Peirce*, of Hodge, Reynolds, Smith, Peirce and Forker, of Hutchinson, argued the cause and was on the brief for appellee.

*Hal Des Jardin*, attorney for the state department of social welfare, argued the cause on behalf of Mary Anne Kannard, a minor.

The opinion of the court was delivered by

HARMAN, C.: Two separate issues are presented in this appeal in a workmen's compensation proceeding.

The first is the familiar question of the relationhip between the workman and the respondent at the time of the former's fatal injury —Was the workman respondent's employee, or was he an independent contractor? The second issue, if the death be found to be compensable, involves the effect of judicial termination of parental rights upon a minor child's entitlement to compensation, and is one of first impression.

Linda Kannard Roelfs, who was married to the workman Jack Anthony Kannard at the time of his death and who remained his widow and unmarried for a period of sixty-four weeks thereafter, prosecutes the claim in her own behalf and for their minor daughter, Mary Anne Kannard. The state department of social welfare has

appeared throughout the proceedings in behalf of the minor child but filed no brief in this court in support of its position.

The trial court made an award of compensation in the maximum statutory amount, payable during the first sixty-four weeks in equal proportion between the widow and the minor child, and thereafter to the minor child until fully paid. Respondent Sam Wallingford, Inc., and its insurance carrier have appealed.

We deal first with the relationship between the deceased workman and the respondent.

All the fact-finders (examiner, director and trial court) found that on April 6, 1966, the date of Kannard's injury and death, he was respondent's employee and not an independent contractor. Appellants contend there was no substantial evidence to support that finding. We cannot agree.

Appellants' contention is largely bottomed on the fact the deceased workman's father made certain statements in a deposition which were inconsistent with his later testimony before the examiner. Upon appeal we are not concerned with such matters, resolution of which lies within the province of the trier of the fact upon consideration of all the evidence.

Briefly stated, the evidence in support of the trial court's finding reveals the following. Jack Kannard and his father orally agreed to construct a dump or boat pit at the grain elevator owned and operated by appellant Wallingford at Coldwater, Kansas, and had commenced such undertaking. On April 6, 1966, in the progress of this work, while the two Kannards and others were removing a large concrete block by means of a caterpillar tractor, a cable attached to the block broke and struck Jack Kannard, causing his immediate death. During the course of the project each of the two Kannards had kept his own time and each was paid weekly by Wallingford at the rate of $3.90 per hour. They were under the supervision and control of an officer of the Wallingford company, Paul Wallingford, who gave directions and instructions as to what was to be done, and who had the right to "fire" either at any time. After the fatal incident the senior Kannard never completed the contemplated project. The Wallingford company paid for all material and for rental of equipment used in the job and paid also for the services of another man who assisted the Kannards in their work at the elevator. The company often performed repair and remodeling work on its elevators by using its own maintenance crew.

The foregoing evidence amply supports the finding that the decedent was an employee of appellant Wallingford at the time of his death. Rules respecting this aspect are well established (*Watson v. Dickey Clay Mfg. Co.*, 202 Kan. 366, 450 P. 2d 10) and further iteration could add nothing to the body of our law. Determination of this issue establishes entitlement of appellee Linda Kannard Roelfs to compensation for herself during the period following her husband's death she remained unmarried.

Appellants further contend the minor child, Mary Ann Kannard, was not a dependent of the workman at the time of his death within the meaning of the Kansas workmen's compensation act and therefore is not entitled to compensation. Further facts must be stated upon this point.

The decedent Jack Kannard and his wife Linda were married on June 1, 1965. Their child, Mary Anne, was born October 11, 1965, at a hospital in Atchison, Kansas. The child was born blind. Immediately after birth her parents turned her over to the Atchison county social welfare department. Neither parent ever saw her and neither had contributed anything toward her support up to the time of the father's death on April 6, 1966. On November 10, 1965, the juvenile court of Atchison county, Kansas, declared Mary Anne Kannard to be a dependent and neglected child within the meaning of the juvenile code and, pursuant to K. S. A. 38-824 (*c*), as amended, found her parents to be unfit persons to have her custody and permanently deprived them of their parental rights in Mary Anne. The court committed the child to the state department of social welfare. No question has been raised respecting the propriety of that proceeding.

We quote further excerpts from the testimony of appellee respecting the disposal of the child:

"Q. Well, can you tell us why you were so disinterested in the child that you never saw it and you gave up its custody?

"A. Well, it wasn't my idea in the first place. Before we got married we had decided that. I agreed to it because I was in love with my husband and I wanted our own life without any trouble.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. (By Mr. Brainerd) Now, the 'we' you have reference to is Jack and you, is that correct?

"A. Yes.

"Q. And am I to understand that this child was conceived before your marriage to Jack?

"A. Yes.

"Q. Was he the father of the child?

"A. He was.

"Q. And so before—If I understand you correctly, it was before the child was born he had prevailed upon you to give up the custody, possession and custody of the child when it was born, is that correct?

"A. Yes.

"Q. Was your husband employed on October 11, 1965, when the child was born?

"A. Yes.

"Q. And did he continue to be employed from that date until the date of his death, April 6, 1966?

"A. Not every day.

"Q. Well, generally he was employed and had an income from his work, is that correct?

"A. Yes.

"Q. During that period of time between October 11, 1965, and April 6, 1966, did your husband ever contribute anything toward the support or maintenance of this child?

"A. No.

"Q. Did you ever contribute anything towards the support and maintenance of this child between the date of its birth and April 6, 1966?

"A. No.

"Q. Did you provide for it in any fashion, whether by cash or clothes or gifts or anything?

"A. We paid hospital bills to get me out of the hospital.

"Q. No, my question was limited to the child.

"A. No.

"Q. Have you ever made any effort to see the child?

"A. Well, it was my understanding that I couldn't."

Upon oral argument we were told the child has never been adopted but has been cared for in a private foster home at state social welfare department expense.

Our workmen's compensation act provides the following definition:

" 'Dependents' means such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident. 'Members of a family,' for the purpose of this act, means only legal widow or husband, as the case may be, and children; . . ."
(K. S. A. 44-508[*j*], as amended.)

The workmen's compensation law in effect at the time of the workman's death provided:

"The amount of compensation under this act shall be:

.   .   .   .   .   .   .   .   .   .   .   .

"(2) *Where death results from the injury.* (*a*) If a workman leaves any dependents wholly dependent upon his earnings, a sum equal to three (3)

times his average yearly earnings, computed as provided in section 44-511 of the General Statutes Supplement of 1961 and any amendments thereto, but not exceeding fifteen thousand dollars ($15,000) and not less than two thousand five hundred dollars ($2,500): . . ." (K. S. A. 44-510.)

Our opinions construing the foregoing provisions, in cases where there has been a legal obligation on the part of a workman to support his child, establish the rule that whether a claimant in a workmen's compensation proceeding is a dependent of a deceased workman is a question of fact and such dependency is to be determined as of the date of the accident. They are in accord with the rule generally that proof of bare legal obligation to support, unaccompanied by either actual support by the decedent or reasonable expectation of support, is ordinarily not enough to satisfy the requirement of actual dependency (see *Richardson v. Robert Drummond Trucking*, 204 Kan. 385, 461 P. 2d 754; also 2 Larson's Workmen's Compensation Law, § 63). However, we have no precedent of our own, and find little elsewhere, as to the effect of judicial termination of parental rights upon a child's entitlement to workmen's compensation benefits. Our statute providing for termination of parental rights was initially enacted in 1957 as a part of a then new and comprehensive juvenile code (now K. S. A. Chap. 38, Art. 8, as amended). It provides:

"(*a*) The provisions of this section shall apply to any child under the age of sixteen (16) years found to be dependent and neglected, within the meaning of this act, either at the initial hearing or any subsequent hearing:

"(*b*) In the absence of an order depriving parental rights, the juvenile court may make such dependent and neglected child a ward of the court and commit the child to:

"(1) The custody of either or both of his parents;

"(2) the care, custody and control of a probation officer duly appointed by the court, or other individual;

"(3) the care of some children's aid society;

"(4) the state department of social welfare; or

"(5) the county department of social welfare.

"(*c*) When the parents, or parent in the case there is one parent only, are (or is) found and adjudged to be unfit persons (or an unfit person) to have the custody of such dependent and neglected child, K. S. A. 38-820 and other applicable provisions of this act having been fully complied with, the juvenile court may make an order permanently depriving such parents, or parent, of their (his or her) parental rights and commit the child:

"(1) To the care of some reputable citizen of good moral character;

"(2) to the care of some suitable public or private institution used as a home or place of detention or correction;

"(3) to the care of some association willing to receive it, embracing in its

objects the purpose of caring for or obtaining homes for dependent and neglected children;

"(4) to the state department of social welfare.

"(d) In any case where the juvenile court shall award a child to the care of an individual or association, in accordance with clause (1) or (3) of subsection (c) of this section, the child shall, unless otherwise ordered, become a ward of, and be subject to the guardianship of the individual or association to whose care it is committed. Such individual or association shall have authority to place such child in a family home, give consent for the adoption of such child, and be party to proceedings for the legal adoption of the child, and such consent shall be the only consent required to authorize the probate court to enter proper order or decree of adoption. In any case where the juvenile court shall award a child to the care of the state department of social welfare, in accordance with clause (4) of subsection (b) and (c) of this section, said state board of social welfare shall be the guardian of the person and the estate of said child and shall be empowered to place such child for adoption and given consent therefor, if received in accordance with clause (4) of subsection (c), or to make transfer of such child as provided for by K. S. A. 38-825. In any such case, upon the filing of the application provided for in section 9 [59-3009] of the act entitled 'act for obtaining a guardian or conservator, or both' by the state board of social welfare, the court shall forthwith appoint the state board of social welfare the 'conservator' of such child. . . ." (K. S. A. 1970 Supp. 38-824.)

Other sections of the act establish procedures to be followed and provide for payment of the expense of care and custody of children in certain situations.

The statutes relied upon by the trial court in support of its conclusion that the deceased workman remained obligated for the support of Mary Anne Kannard at the time of his death, and the only authority cited to us by appellee and by the state department of social welfare upon oral argument, are K. S. A. 38-823, 38-827 and 38-828. Reliance is placed upon a single paragraph at the end of each which states:

"Nothing in this section [act] shall be construed to mean that any person shall be relieved of his legal responsibility to support a child."

Certainly this negative phrase imposes no obligation of any kind upon any one. To the contrary, close analysis of the entire contents of the three cited statutes in connection with K. S. A. 1970 Supp. 38-824 leads to the conclusion no obligation of support was intended where parental rights are terminated.

K. S. A. 38-823 makes provision for payment from county funds of the expense of the temporary care and custody of a child once a petition alleging its dependency and neglect has been filed in juvenile court and pending a final determination.

Likewise 38-827 makes provision for county payment of the expense of care and custody of a dependent and neglected child who has been committed under clauses (2) and (3) of subsection (b) of 38-824. Noteworthy is the fact subsection (b) is expressly applicable only in situations where there has been no order depriving the parent of parental rights. In the case at bar action was taken under subsection (c).

Then 38-828 provides that when, under the provisions of either 38-823 or 38-827, expenses have been paid out of county funds for child care, a parent may be required to make reimbursement to the county of all or any part of such payment. The section further prescribes procedure for enforcing such responsibility.

Consideration of these interrelated statutes indicates legislative intent that once an order is made in the strong language of 38-824 (c) *permanently depriving* a parent of parental rights there remains no legal obligation of support. We think this is in accord with the general tenor and purpose of the entire act. The rights and duties or obligations arising from the relationship of parent and child are generally held to be reciprocal (67 C. J. S., Parent and Child, § 2B). In *Anguis v. Superior Court,* 6 Ariz. App. 68, 429 P. 2d 702, the court was concerned with the nature of parental rights which could be permanently terminated by a juvenile court. After acknowledging that an Arizona statute provides every child is entitled to support from its natural parents, the court stated:

". . . we construe the term 'parental rights' in the broader term as the sum total of the rights of the parent or parents in and to the child as well as the rights of the child in and to the parent or parents. In other words, we construe parental rights to include both parental rights and obligations." (p. 71.)

K. S. A. 1970 Supp. 38-824 recognizes two distinct proceedings affecting the parent-child relationship in dealing with children who have been declared to be dependent and neglected. Under subsection (b) the parent may be deprived of custody and guardianship but certain residual rights and obligations remain which may pose legal or sociological problems with respect to the child's future welfare, and, indeed, under K. S. A. 38-829 such order remains in certain instances subject to revocation as the best interests of the child may require. On the other hand, subsection (c) appears intended as a complete termination of all parental rights, this action to be taken only after the additional finding of parental unfitness

(see *In re Armentrout*, 207 Kan. 366, 485 P. 2d 183). As such it was not primarily designed to deal with problems of immediate or temporary custody or supervision but rather to look to a final and permanent settlement of all problems of custody and supervision by a complete and final divestment of all legal rights, privileges, duties, and obligations of the parent and child with respect to each other, and by replacement of the natural parent by another guardian or adoptive parent (see U. S. Department of Health, Education and Welfare, Social Security Admin., Children's Bureau Publication No. 394-1961, "Legislative guides for the termination of parental rights and responsibilities and the adoption of children," pp. 2-4, 9-10, 19-20).

Accordingly, we hold that deprivation of parental rights in a child pursuant to K. S. A. 1970 Supp. 38-824 (*c*) terminates the parental obligation of support, and, within the meaning of the workmen's compensation act, a child is no longer a dependent of a workman whose parental rights have been terminated, and such child is not entitled to workmen's compensation benefits upon the workman's death.

The trial court correctly awarded compensation to appellee Linda Kannard Roelfs personally for a period of sixty-four weeks. Such award, however, is not subject to apportionment and as thus modified that part of the judgment is affirmed. That part of the judgment awarding compensation to or on behalf of the minor child is reversed.

APPROVED BY THE COURT.