**Wayne O. WEBB et al.**

v.

**Rosalind S. SCULLY et al.**

**Civ. A. No. 76–4029.**

United States District Court,
E. D. Louisiana.

April 27, 1977.

Robert E. Tillery, Baton Rouge, La., for plaintiffs.

F. T. Kolb, New Orleans, La., for defendants.

C. Gordon Johnson, Jr., New Orleans, La., for defendant State Farm.

SEAR, District Judge:

On a prior day the motion of all defendants to dismiss, and the motion of defendant State Farm Insurance Company to dismiss for failure to state a claim upon which relief can be granted came on for a hearing. After oral argument the motions were taken under submission pending the filing of supplemental memoranda.

The history of the parties and their claims deserves some explication as a precedent to analyzing these motions. On February 25, 1958, Mitzi Rosetta Alsip Daughtrey, then the lawful wife of Wayne O. Webb, gave birth to John Lee Webb. On January 30, 1967, by order of the Juvenile Court of Cowley County Kansas, Daughtrey and Webb were deprived of their "parental rights" to their son, pursuant to Kansas law then in effect, Kan.G.S. 38–824(c).[1] The court placed John Lee in the care of the Hillcrest Children's Home in Hot Springs, Arkansas. On September 2, 1971 Hillcrest in turn placed John Lee in the home of John and Jeanne Sitton who agreed by way of a "Foster Parent's Agreement Form" to "assume all financial responsibility for the child while he is in our home." The Sittons took John Lee to their home in Jefferson Parish, Louisiana. On October 21, 1975 John Lee died as a result of injuries sustained several weeks earlier in a collision between the motorcycle he was riding and the automobile of the defendants Rosalind and Matthew Scully.

1. When the parents, or parent in the case there is one parent only, are (or is) found and adjudged to be unfit persons (or an unfit person) to have the custody of such dependent and neglected child, section 20 and other applicable provisions of this act having been fully complied with, the juvenile court may make an order, permanently depriving such parents, or parent, of their (his or her) parental rights and commit the child:

(1) To the care of some reputable citizen of good moral character;

(2) to the care of some suitable public or private institution used as a home or place of detention or correction;

(3) to the care of some association willing to receive it, embracing in its objects the purpose of caring for or obtaining homes for dependent and neglected children;

(4) to the state department of social welfare.

Kan.G.S. 38–824(c) (1959, as amended 1965).

Thereafter John Lee's natural parents Daughtrey and Webb brought this suit for the wrongful death of their child. Co-plaintiffs Hillcrest and the Sittons seek medical and funeral expenses. The two motions under submission are essentially identical and seek dismissal of all plaintiffs.

■ Defendants contend that the Kansas judgment divesting plaintiffs Daughtrey and Webb of their "parental rights" pre-cludes them from bringing an action under La.Civ.Code art. 2315 for the death of their son. Plaintiffs on the other hand argue that the Kansas decree deprived them only of legal control over John Lee, and that, since they are still the natural parents they have a right to sue.

The issue for decision is whether the term "parental rights" in the Kansas statute in-cludes the right of the natural parents un-der 2315 to sue for the death of their child. The question appears to be one of first impression, the closest analogous case being *Roelfs v. Wallingford, Inc.*, 1971, 207 Kan. 804, 486 P.2d 1371. In *Roelfs* .the plaintiff sought damages for the death of his parent under the Kansas workmen's compensation statute. Since the statute required that the plaintiff be a dependent of the deceased in order to recover, the question arose whether a prior court decree terminating the paren-tal rights of the deceased barred the plain-tiff's dependency as a matter of law. The Kansas Supreme Court concluded that a deprivation of parental rights

"terminates the parental obligation of support, and, within the meaning of the workmen's compensation act, a child is no longer a dependent of a workman whose parental rights have been terminated, and such child is not entitled to work-men's compensation benefits upon the workman's death."

Although the *Roelfs* case lends a contour to the phrase "parental rights", it does not decide the question here, for the Louisiana wrongful death statute does not designate dependency as a requirement of standing to sue. *Hamilton v. Canal Barge Co., Inc.*, E.D.La.1975, 395 F.Supp. 978, 985.

Louisiana has recently adopted a proce-dure [2] bearing some resemblance to that provided by the Kansas statute. In the definitions section of the new Louisiana law, parental rights are discussed as fol-lows:

"(3) 'Termination of parental rights' is the permanent elimination by court order of all parental rights and duties including residual parental rights.

"(4) 'Residual parental rights' are those rights and responsibilities remaining with the parents after the legal transfer of custody of the child, including but not necessarily limited to right of visitation, consent to adoption, the right to deter-mine religious affiliation, responsibility of support, and the right of inheritance from said child. The said child and his lawful descendants are relieved of all of their legal duties and divested of all their legal rights with regard to the parent or other relatives except the right of inheri-tance."

La.R.S. 13:1600 (Supp.1977). Again, the Louisiana law can only suggest what *might* have been meant by the Kansas statute which contains no definitions section.

As yet, no Louisiana cases offer further clarification of the term "parental rights" as used in La.R.S. 13:1600 or elsewhere. However, Louisiana jurisprudence on adoption may by analogy offer some guid-ance. Defendants cite the recent case of *Simmons v. Brooks*, La.App. 4 Cir. 1977, 342 So.2d 236 which held that a child who had been legally adopted had no right to sue for the wrongful death of his biological father. However, *Simmons* is counterbalanced by *Bertrand v. State Farm Fire & Casualty Co.*, La.App. 3 Cir. 1976, 333 So.2d 322 which held that a natural mother who had irrevocably surrendered her child pursuant to an interlocutory decree of adoption could nonetheless sue for the child's wrongful death. In this case John Lee was never

2. La.R.S. 13:1600–1605 (Supp.1977). For guid-ance further afield *see Webb v. Barnett*, Tex. Civ.App.1947, 207 S.W.2d 706, 708, and *Anguis v. Superior Court*, 1967, 6 Ariz.App. 68, 429 P.2d 702, 705.

adopted, and the Kansas decree may have effectively rendered him an orphan with no legal parents on the one hand, yet a surfeit of surrogate parents, biological and foster, on the other.

Since both statutory and case law cannot answer this question, I turn inward to my own sense of logic and fairness. "To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent." La.Civ.Code art. 21. The phrase "parental rights" evokes only one simple and straightforward definition: rights[3] accruing to an individual because of his status as a parent. Certainly, the right to sue under article 2315 which is accorded to the mother and father of the deceased, absent a surviving spouse or child, falls within this definition. And fairness dictates that a parent who has been found unfit to raise his child must not be permitted to benefit from the death of the neglected offspring.

The recent case of *King v. Cancienne*, La.1975, 316 So.2d 366, supports this conclusion by inverse analogy. In *King* the Louisiana Supreme Court went beyond a literal reading of article 2315 to hold that a "putative spouse" may sue for wrongful death. By virtue of articles 117 and 118 of the Louisiana Civil Code one whose marriage is inflicted with a nullity shall nonetheless enjoy all the civil effects of a valid marriage if it was undertaken and continued in good faith. As the court in *King* construed article 2315 in light of other Code articles to reach a just result, so here must article 2315 be read in relation to Kan.G.S. 38–824(c). One who has been stripped of "parental rights" is in effect the opposite of a "putative spouse", since he has abdicated the duties of a natural parent, or, to put it another way, he has performed these duties in bad faith.

I conclude that plaintiffs Webb and Daughtrey have lost their right to sue under 2315 by reason of the Kansas Juvenile Court decree.

■ There remains the issue of the claims of Hillcrest and the Sittons for medical and funeral expenses. Clearly they bore the responsibility for these payments under the original court order assigning John Lee to the custody of Hillcrest, and under the subsequent "Foster Parents Agreement" between Hillcrest and the Sittons. There has, however, been no allegation that either party actually paid these expenses. Neither can be reimbursed if nothing was paid in the first place. La.Civ.Code art. 2161(3); *St. Paul Fire & Marine Ins. Co. v. Gallien*, La.App. 1 Cir. 1959, 111 So.2d 571; *Hartford Accident & Indemnity Co. v. Byles*, La.App. 3 Cir. 1973, 280 So.2d 624. Therefore, these claims must also be dismissed.

Finally, the Sittons claim for $500 property damage must fall for lack of jurisdictional amount since the larger claims to which it was appended are to be dismissed.

For the foregoing reasons, the motions under submission are GRANTED.

---

**3.** Article 2315 contains two separate rights of action. One, the wrongful death action, is a "legal right", *i. e.*, one provided by statute and enforceable in court. *Collins v. Becnel*, La. App. 4 Cir. 1974, 297 So.2d 506; *Simmons v. Brooks*, La.App. 4 Cir. 1977, 342 So.2d 236; *King v. Cancienne*, La.1975, 316 So.2d 366. Until recently it was also held that the second action, the survival action, was also a "legal right". *Collins v. Becnel, supra*; *Simmons v. Brooks, supra*; *Moore v. Kinney*, La.App. 3 Cir. 1975, 315 So.2d 340. However, *King v. Cancienne, supra*, casts doubt upon that proposition and suggests that the survival action may be an "inheritance right". The classification of the two actions is merely academic, since under the proposed definition of "parental rights" both "legal" and "inheritance" rights may be included.