584 P.2d 713

Pamela C. WASSON,
Petitioner-Appellant,

v.

Glenn W. WASSON,
Respondent-Appellee.

No. 3411.

Court of Appeals of New Mexico.

Sept. 12, 1978.

R. Thomas Dailey, Dailey & Cardin, P. C., Farmington, for petitioner-appellant.

## OPINION

SUTIN, Judge.

Pursuant to § 22–2–23, N.M.S.A.1953 (Vol. 5, 1975 Supp.), petitioner, divorced wife of respondent, and mother of two children born of the marriage, petitioned the trial court to terminate the parental rights of respondent. The petition was denied and the mother appeals. The father, respondent, is absent in this appeal. We affirm.

■ The trial court found that no parent-child relationship existed between the father and the children; that the father abandoned the children; and that the only basis for not ordering termination of the rights immediately after the hearing was the court's concern with property rights of the children. Furthermore, the court found that property rights which would be given up by the children were not substantially different in this case than would be present in any case involving termination of parental rights. The rights of the minor children to inherit, not only from their father but as issue of his forbears, is a right that should not be dispensed with by the court. To cut off the rights of the children to their natural father would in effect penalize them through no fault of theirs to protections of inheritance, Social Security benefits, veteran's benefits, medical insurance and other protective devices and services obtainable by most if not all children upon the death of a father.

The court concluded that the father was not otherwise unfit; that the continuation of the father's conduct will probably not cause any serious harm to the minor children nor cause any disintegration of the parent-child relationship; and that the minor children were entitled to a legal father.

■ Even though neither the father nor guardian ad litem appointed by the district court submitted briefs nor appeared on appeal, this Court must recognize and consider all aspects of the legal problems before it. As a matter of public policy, in every proceeding in which minor children are involved, a court's primary obligation is to further the best interests of the child. We note that an attorney is required for an infant not otherwise represented in an action. Section 21–1–1(17)(c), N.M.S.A.1953 (Repl.Vol. 4). In fact it would have been plain error for the court to proceed in the absence of counsel for the children. *People In Interest of M. B. v. J. B.*, 535 P.2d 192 (Colo.1975). A court of equity, if cognizant of the necessary facts, should on its own motion protect the rights of minors, when involved in litigation to which they are not parties. *Workman v. Workman*, 167 Neb. 857, 95 N.W.2d 186 (1959). Furthermore, if no guardian ad litem has been appointed, it would be the duty of this Court to see that rights of minor children are protected. *Jackson v. Walters*, 246 S.C. 486, 144 S.E.2d 422 (1965). *See Haden v. Eaves*, 55 N.M. 40, 226 P.2d 457 (1950). Minor children in court are represented not only by a guardian ad litem, but by the court itself. *Bond v. Joplin's Heirs*, 64 N.M. 342, 328 P.2d 597 (1958); *Haden, supra*.

■ It is the duty of a trial court and this Court to protect legal rights of children. If the rights of children were not divested, the trial court and this Court would favor a termination of the father's parental rights with the children.

With this policy in mind, we approach the mother's contention raised in this appeal.

Section 22–2–23(G) reads:

A judgment of the court terminating parental rights divests the parent *and the child of all legal rights, privileges,* duties and obligations, *including rights of inher-*

*itance, with respect to each other . . .* [Emphasis added.]

See *Anguis v. Superior Court,* 6 Ariz.App. 68, 429 P.2d 702 (1967); *Roelfs v. Sam P. Wallingford,* 207 Kan. 804, 486 P.2d 1371 (1971).

Section 22–2–21(I) defines "parental rights" to mean "all rights of a parent with reference to a minor, including parental right to control, or to withhold consent to an adoption, or to receive notice of a hearing on a petition for adoption." We are not concerned with these "parental rights"; we are concerned with the children's rights in regard to their parent's property.

The mother claims that a finding of "no parent-child relationship" between the father and his children is decisive and that the court should not have considered the rights of the children because those rights have not vested and are remote. Her argument is that the parent-child relationship is non-existent and that this relationship is the sole consideration in termination proceedings. Therefore, the trial court went beyond the "sole consideration" defined in *Huey v. Lente,* 85 N.M. 597, 514 P.2d 1093 (1973), adopting the special concurring opinion of Judge Hernandez at 85 N.M. 585, 514 P.2d 1081 (Ct.App.1973). We disagree.

In *Huey v. Lente,* Huey operated a foster parent home. After HSSD determined that the Lente child should be returned to his mother, Huey sued Lente to terminate her parental rights to her son. Judge Hernandez said:

> As a threshold matter, a large part of the focus of *the trial court's findings* and the greater part of the petitioners' presentation of evidence involved matters which I would hold to be irrelevant as a matter of law. . . . By the clear and unambiguous language of the statute, *the sole consideration to be applied in termination proceedings is the relationship of "a parent with respect to a minor."* § 22–2–23, supra. [Emphasis added.] [85 N.M. at 595, 514 P.2d at 1091.]

In the instant case, the court did give sole consideration in its findings to the relationship of the father to his children. The trial court did not go beyond the sole consideration defined in *Huey, supra.* In effect, the court said that it is more important to protect the rights of the children than to cut them off to satisfy the desires of the mother.

When the court found the parental relationship between respondent and children non-existent, the court simply meant that the father was not carrying on the duties of a father with respect to his relationship with his children.

The mother overlooks the opening language of § 22–2–23(A). It reads:

> The parental rights of a parent with respect to a minor *may* be terminated by the court . . . . [Emphasis added.]

■■■ The word "may" is not mandatory. It is permissive or directory. Section 1–2–2(I), N.M.S.A.1953 (Repl.Vol. 1). When a child has been abandoned by a father, i. e., when the parental relationship between father and child is non-existent, it is not mandatory that the court terminate parental rights. The decision rests within the judicial discretion of the court. The trial court did not find the father "unfit" as provided in § 22–2–23(A)(3). See *In re Moody,* 21 Or.App. 396, 535 P.2d 102 (1975). To the contrary, the court concluded that the father was "not otherwise unfit." This meant that the father-children relationship could be controlled by the divorce decree and any subsequent proceedings thereunder.

We believe the trial court envisioned among many protective devices, one, for example—the right of the children to recover wrongful death damages arising out of the death of their father due to the negligence of a third person. See *Webb v. Scully,* 430 F.Supp. 672 (E.D.La.1977); *Roelfs, supra.* The welfare of the children was uppermost in the court's mind. This it has

been, and should always be in cases involving the termination of parental rights.

■ The trial court did not abuse its discretion.

The other points raised by plaintiff are without merit.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., dissents.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

I recognize that the use of the word "may" in the opening sentence of § 22–2–23, supra, clearly indicates a legislative intention that the termination of parental rights under this section should rest in the sound discretion of the trial court. However, it is my opinion that there was an abuse of that discretion in this instance.

For point of emphasis, I wish to repeat the following findings and conclusions of the trial court:

"2. Since the time of the divorce, Respondent has willfully failed to support the children or to provide for their financial, emotional, educational or spiritual needs.

"3. Since the time of the divorce Respondent has not maintained a parental relationship with the children and has performed none of the duties normally performed by a father."

The following, although entitled findings, are in fact conclusions:

"4. No parent-child relationship exists between Respondent and the children.

"5. Respondent has abandoned the children."

These findings were supported by clear and convincing evidence.

Section 22–2–23, supra, is the statutory embodiment of a long standing rule of law in New Mexico, namely; that parental rights although entitled to considerable legal deference are not absolute and are subject to control or termination by legislative or judicial action. See *Focks v. Munger*, 20 N.M. 335, 149 P. 300 (1915); *Shorty v. Scott*, 87 N.M. 490, 535 P.2d 1341 (1975). I also recognize that there is another long standing rule, and that is, in all matters involving child-parent relationships, principle consideration should be given to what the best interests and welfare of the child are. *Pra v. Gheiardini*, 34 N.M. 587, 286 P. 828 (1930). The trial court gave as its reason for refusing to terminate respondent's parental rights "was concern with the property rights of the children." There is nothing in the record to indicate that the respondent has or will possibly ever have anything to leave to his children. To continue the child-parent relationship upon the vague possibility that the children might receive some benefits upon respondent's death in light of the trial court's own findings that respondent has not fulfilled one of his duties of parenthood is an abuse of discretion, in my opinion. Accordingly, I would reverse the order of the trial court.