No. 64,461

STATE OF KANSAS *ex rel.* SECRETARY OF SOCIAL AND REHABILI-
TATION SERVICES, *Appellant;* v. BARBARA J. CLEAR (now Barbara
Finnigan), *Appellee.*

(804 P.2d 961)

Opinion filed January 18, 1991.

*John R. Dowell,* of Department of Social and Rehabilitation Services, of Ottawa, argued the cause, and *David N. Sutton,* chief of litigation, Child Support Enforcement, Department of Social and Rehabilitation Services, of Topeka, was with him on the briefs for appellant.

*Carol R. (Gilham) Jones,* of Lawrence, argued the cause, and *Charles D. Vincent,* of Barkis & Vincent, of Paola, was with her on the briefs for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The Department of Social and Rehabilitation Services of the State of Kansas (SRS) appealed the district court's finding that Barbara J. Clear (Finnigan) relinquished parental rights to her minor children pursuant to K.S.A. 38-125 *et seq.,* and, as a result, her obligation to pay child support terminated as a matter of law. The Court of Appeals first determined that the issue before it was one of law and thus subject to unlimited appellate review. *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). Second, it found a different issue was determinative of the case, and that issue had to be considered to prevent a denial of fundamental rights. The Court of Appeals then concluded that SRS had not accepted the surrender of the children; therefore, as a matter of law, there was no relinquishment pursuant to K.S.A. 38-125 *et seq.* and it need not determine the issue raised on appeal. The Court of Appeals reversed the district court and remanded the matter for further proceedings. Pursuant to Supreme Court Rule 8.03 (1990 Kan. Ct. R. Annot. 40), Clear petitioned for review, claiming that the Court of Appeals had improperly decided the matter. We accepted review.

SRS recognizes that a termination of parental rights initiated by the State relieves that parent of future child support obligations, but contends that a voluntary relinquishment of parental rights by a parent pursuant to K.S.A. 38-125 *et seq.* does not terminate the parent's liability to repay SRS for any assistance expended upon the child's behalf under K.S.A. 1989 Supp. 39-718b. On the other hand, Clear contends, and the trial court so held, that her voluntary relinquishment of parental rights to the children terminated her obligation to repay SRS for the assistance expended for the children.

Barbara Clear, now Barbara Finnigan, was divorced from Steven Clear in 1978 and awarded custody of their four minor children. Steven Clear was ordered to pay $200 a month in child support. In November 1986, the four children were determined to be children in need of care and were placed in the custody of the maternal grandmother, Mildred Burk, who then received AFDC payments for the four children. The father is not a party to this action, and the oldest child has now reached the age of majority.

While Barbara Clear had custody of the children from June 1978 until November 1986, the father paid only $50 of the court-ordered child support. In January of 1989, SRS filed a petition pursuant to K.S.A. 39-755 seeking reimbursement from Barbara Clear for the money paid to Burk in AFDC payments since 1986. At the hearing on April 11, 1989, Barbara Clear claimed that, since she was originally not ordered to pay child support by the district court, if she relinquished her parental rights to the children pursuant to K.S.A. 38-125 *et seq.*, she would be relieved of supporting the children in the future. The trial court found that, although the original decree of divorce did not order her to pay child support while the children were in her custody, *State ex rel. Secretary of SRS v. Castro*, 235 Kan. 704, 684 P.2d 379 (1984), did not apply because the original support order was later modified and the custody of the children was given to the maternal grandmother by the district court. The trial court found that, subsequent to modification of the support order, Barbara Clear had a common-law duty to support her children and then determined that, under K.S.A. 1989 Supp. 39-718b, Clear owed SRS $3,904 for unreimbursed assistance paid to the maternal grandmother by SRS for the support of the minor children since 1986.

At the hearing before the district court, SRS provided the written consent form necessary for Clear to relinquish and surrender her children to SRS. After questioning Clear about her relinquishment of the children to SRS, the district court found that her consent was freely and voluntarily given, without the influence of any other facts or circumstances, and granted her request to relinquish her parental rights to the children. The record of the hearing shows that counsel for SRS did not object

to the district court's granting Clear's voluntary relinquishment of her parental rights, but only objected to the district court's finding that, after a voluntary relinquishment of her parental rights, Clear was not liable to reimburse SRS for any assistance expended on the children after the relinquishment. SRS claimed that relinquishment of parental rights pursuant to K.S.A. 38-125 *et seq.* does not relieve a parent of his or her obligation to reimburse SRS for the assistance expended on the child's behalf until the child is adopted and SRS is relieved of its obligation to support the child. After reviewing the record on appeal, we find that the Court of Appeals' determination that there was no evidentiary record of an acceptance of the children by SRS is incorrect. We will therefore determine the issue raised in the appeal.

K.S.A. 38-125 provides:

"Any parent or parents or person *in loco parentis* of a child may relinquish and surrender such child to the department, and *if the department shall accept said child* in writing, the department shall thereupon stand *in loco parentis* to such child and shall have and possess over such child all the rights of a natural parent or legal guardian, including the power to place such child for adoption and give consent thereto. Minority of a parent shall not invalidate such parent's relinquishment and surrender of said child." (Emphasis added.)

K.S.A. 38-126 provides:

"All relinquishments and *surrender* to the department under this act shall be in writing and executed by: (a) Both parents of the child; (b) one parent, if the other parent is deceased; (c) the mother, if the father's consent is found unnecessary under K.S.A. 38-1129; or (d) a person *in loco parentis.*" (Emphasis added.)

K.S.A. 38-127 provides:

"The relinquishment provided by this act shall be signed and acknowledged before the court by the person or persons by whom it is executed and shall sufficiently identify the child or children so relinquished. It shall be the duty of the court, in all such cases of relinquishment so executed, to advise the parent or parents or other person *in loco parentis* of such children of the consequences of the act of relinquishment."

K.S.A. 38-128 provides:

"In all cases where a parent or person *in loco parentis* has relinquished and *surrendered* his child to the department pursuant to this act, and the judge before whom the relinquishment was executed shall have stated on

the relinquishment document that the parent or the person *in loco parentis* had been advised by him of his rights and that the act of the parent or person *in loco parentis* was voluntary, all the rights of the parent or person *in loco parentis* shall thereupon be terminated, including the right to receive notice in a subsequent adoption proceeding involving said child." (Emphasis added.)

For support of its position, SRS relies on our language in *Leach v. Leach*, 179 Kan. 557, 296 P.2d 1078 (1956).

*Leach* was originally a divorce case. Approximately two years after the father had been granted custody of the children, the mother signed and acknowledged an instrument entitled "Relinquishment" in which she consented to the court awarding full custody of the children to the father. The father then filed a motion to modify the custody order. Based on the consent by the mother, the district court awarded the father full custody of the children. Subsequently, the mother requested that the district court set aside the custody order. After the district court refused, the mother appealed. We determined that the instrument could only be considered as a written statement of what the mother believed to be in the best interests and welfare of her son and not a contract between the parties. The *Leach* court recognized that children are not subject to gift as is property. The court then noted nothing short of a finding of unfitness in a divorce action (G.S. 1949, 60-1510 [1955 Supp.]), a valid adoption decree (G.S. 1949, 59-2101 *et seq.*), or a juvenile court proceeding which determines a child to be dependent or neglected (G.S. 1949, 38-401 *et seq.*) will deprive a parent, by the parent's own act, of the right or permit the parent to escape his responsibility to his or her minor children. 179 Kan. at 559.

We find SRS's reasoning flawed. First, we note that when *Leach* was decided there were other statutory procedures that affected the relationship between the parent and a child. G.S. 1949, 38-301 *et seq.* provided another method of protecting children who were dependent or neglected. G.S. 1949, 38-113 permitted parents who were unable to support their children to relinquish the children, in writing, to a corporation organized for the care and maintenance of destitute and friendless children. If the corporation accepted the parents' relinquishment of the children, it had legal custody of the children and all rights of a

natural or legal guardian. Second, and more important, the relinquishment statute, K.S.A. 38-125 *et seq.*, was not enacted until 1968, 12 years after the *Leach* decision.

Both SRS and Clear rely on *Roelfs v. Wallingford, Inc.*, 207 Kan. 804, 486 P.2d 1371 (1971), as authority for their positions. In *Roelfs* a child, who was born blind, was turned over by the parents to the county social welfare department immediately after her birth. Later, the parents were found to be unfit persons and their parental rights were terminated. Subsequent to the termination of parental rights, the natural father was killed in a work-related accident. The issue in *Roelfs* was whether the judicial severance of parental rights terminated the child's right to receive workers compensation benefits upon the death of her natural father. We noted that the rights and duties or obligations arising from the relationship of parent and child are generally held to be reciprocal. *Roelfs*, 207 Kan. at 810. We determined that deprivation of parental rights in a child pursuant to K.S.A. 1970 Supp. 38-824(c) terminated the parental obligation of support, and, within the meaning of the Workers Compensation Act, a child was no longer a dependent of a worker whose parental rights had been terminated. The child was not entitled to workers compensation. 207 Kan. at 811.

A general rule of duty is stated in 67A C.J.S., Parent & Child § 49:

"It is generally the rule that the parents of minor children have the duties to support and maintain them. The parents have also been given the duty to educate them, and this duty has been held to be primary, imperative, and legal. The duty of parents to provide necessary support and maintenance may be said to rest on the inability of the children to care for themselves, and arises out of the natural relationship, and on the implied promise of the parties to a marriage to support any children born into the family. Thus, the obligation is a fundamental one arising out of the relationship of marriage and does not rest on a theory of preventing the children from becoming a charge on society, and it derives from natural law."

Another rule regarding parental duties is stated in 67A C.J.S., Parent & Child § 51: "Various circumstances affect the duty of parents to support their children, but generally the welfare of the child is of paramount consideration in the determination thereof. . . . Where parental rights are terminated in dependent

and neglected child proceeding[s], no obligation to support the child remains."

In *Roelfs*, we noted that during the termination of parental rights the focus is "a final and permanent settlement of all problems of custody and supervision by a complete and final divestment of all legal rights, privileges, duties, and obligations of the parent and child with respect to each other and by replacement of the natural parent by another guardian or adoptive parent." 207 Kan. at 811. In *Roelfs*, we quoted from *Anguis v. Superior Court*, 6 Ariz. App. 68, 429 P.2d 702 (1967), that parental rights are construed to "include both parental rights and obligations." 207 Kan. at 810.

SRS relies on cases from other jurisdictions for authority that, when there is a voluntary relinquishment of parental rights, the relinquishing parent's obligation of support does not terminate. SRS cites *Kimble v. Kimble*, ___ W. Va. ___, 341 S.E.2d 420 (1986), where a father relinquished visitation rights and executed a consent to adoption of the child by the mother's current husband in exchange for a release of his obligation to support the child. The adoption was never consummated. A year later, the mother sued the father for delinquent support payments. The court found that an agreement between former spouses to terminate child support alone is insufficient to terminate parental duties as to child support, although in some circumstances such an agreement between parents could later be approved and enforced by the courts. The West Virginia court remanded the case for determination of the best interests of the child and the reasons for the failed adoption.

SRS refers to *Wasson v. Wasson*, 92 N.M. 162, 584 P.2d 713 (Ct. App. 1978), where the mother petitioned the court to terminate the divorced father's parental rights to their two children. Although the divorced father had abandoned his children, the court refused to terminate his parental rights because termination would deprive the children of the protections of inheritance, social security benefits, or veteran's benefits upon the father's death.

Based on the reasoning of these cases, SRS argues that since the mother has not been declared unfit her duties to the children should not be terminated and the children are entitled to maintain the status quo in the parent-child relationship. We find that these

cases are factually different from our case. Here, the mother has pursued a statutory method to relinquish her parental rights.

Three statutory methods for termination of parental rights are: (1) adoption, K.S.A. 59-2101 *et seq.*; (2) termination of parental rights, K.S.A. 38-1581 *et seq.*; and (3) relinquishment of rights, K.S.A. 38-125 *et seq.* Our adoption statutes contemplate a complete severance of the child's ties and relationship with his or her natural parents. The natural parent is relieved of all duties and obligations to the child. The effect of a decree of adoption is to confer a legal status of parent and child upon adoptive parents and adopted children, including the legal consequences, obligations, and incidents that arise out of the status of parent of the child. K.S.A. 59-2103.

The purpose of termination of parental rights is to provide stability to the life of a child who must be removed from the home of a parent. The State's primary goal for all children whose parents' parental rights have been terminated is placement in a permanent family setting. K.S.A. 1989 Supp. 38-1584. After parental rights have been terminated, the court may grant custody of the child for adoption proceedings or for long-term foster care, if it does not appear that adoption is a viable alternative. If the adoption of a child has been accomplished, the court shall enter an order discharging the child from the court's jurisdiction. The termination of parental rights by the State severs the child's ties with the natural parent. A parent whose parental rights have been terminated is relieved of all duties and obligations to support the child and the burden is placed on the State until the State is legally relieved of the obligation.

Any parent may voluntarily surrender a child to SRS, and if SRS accepts the child in writing, the department stands *in loco parentis* to the child and possesses all the rights of a natural parent, including the power to place the child for adoption. SRS claims that a parent who relinquishes parental rights pursuant to K.S.A. 38-125 *et seq.* is still liable to pay for the assistance expended on the child's behalf under 39-718b. We disagree.

The fundamental rule of statutory construction is that the intent of the legislature governs. When construing a statute, we should give words in common usage their natural and ordinary meaning. *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632,

635, 694 P.2d 462 (1985). K.S.A. 1989 Supp. 38-1502(d) defines "parent," when used in relation to a child or children, as including a guardian, conservator, and every person who is by law liable to maintain, care for, or support the child. K.S.A. 1989 Supp. 39-718b(a) clearly states that "a child's parent, parents or guardian shall be liable to repay to the secretary of social and rehabilitation services any assistance expended on the child's behalf, regardless of the specific program under which the assistance is or has been provided." A person who has relinquished parental rights through adoption, a voluntary termination of parental rights, or an involuntary severance of parental rights is no longer a parent. These statutory procedures contemplate a complete severance of the child's ties and relationship with his or her natural parents. The parent whose rights have been severed is relieved of all duties and obligations to the child.

The effect of a voluntary termination is to confer upon SRS the legal consequences, obligations, and incidents that arise out of the status of parent of the child. Clear is no longer a parent and is not liable under K.S.A. 1989 Supp. 39-718b to repay SRS for any services or assistance expended on the children's behalf.

The Court of Appeals' determination that SRS did not voluntarily accept the surrender of the children and thus there was no relinquishment of parental rights is reversed; the judgment of the district court is affirmed.

ABBOTT, J., not participating.