COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Annunziata and
          Senior Judge Coleman
Argued at Richmond, Virginia


COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT,
 ex rel. SPOTSYLVANIA COUNTY DEPARTMENT
 OF SOCIAL SERVICES
                                          OPINION BY
v.   Record No. 2041-01-2        JUDGE SAM W. COLEMAN III
                                        APRIL 16, 2002
KATHERYN R. FLETCHER


          FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                  Dixon L. Foster, Judge Designate

          Gary P. Webb, Special Counsel (Randolph A.
          Beales, Attorney General; Bernard L. McNamee
          II, Deputy Attorney General; Robert B.
          Cousins, Jr., Senior Assistant Attorney
          General; Craig M. Burshem, Regional Special
          Counsel, on brief), for appellant.

          No brief or argument for appellee.


     The Department of Social Services (DSS) appeals the trial

court's ruling that a court order which terminates the residual

parental rights of a parent to his or her children also

terminates the parent's obligation to support the children.  DSS

contends that Katheryn R. Fletcher was required to support her

two children after her parental rights were terminated and,

thus, DSS could recover from her the sums paid in public

assistance to support the children while in foster care or in

DSS's custody.  We affirm the trial court's ruling that

termination of parental rights also terminated Fletcher's responsibility of parental support.

## BACKGROUND

Fletcher is the natural mother of two daughters. In April 1997, Spotsylvania DSS was granted custody of the two children, who have since remained continuously in foster care. In May 1998, the Spotsylvania Juvenile and Domestic Relations District Court terminated Fletcher's residual parental rights to the children. In October 1999, the Division of Child Support Enforcement (DCSE) of DSS filed a juvenile court petition pursuant to Code § 63.1-251.3 against Fletcher seeking child support while the children were in the custody of DSS and in foster care and receiving public assistance, including the time after Fletcher's parental rights had been terminated. The juvenile court held that Fletcher was required to support her children while they were in DSS's custody or in foster care prior to the termination of parental rights but that the duty of support ended when parental rights were terminated.

On appeal, the circuit court ruled in the de novo proceeding that Fletcher was obligated to reimburse DCSE based upon Fletcher's income and the support guidelines at $65 per child per month but only through the date Fletcher's parental rights were terminated. DCSE appeals that ruling.

ANALYSIS

DSS argues that Code § 16.1-283, which authorizes a trial court to terminate parental rights, is silent as to a parent's responsibility thereafter to support a child; thus, DSS contends the Code does not allow or authorize a court to terminate a parent's responsibility to support his or her child. DSS argues that because the statute only addresses termination of parental "rights" and is silent as to parental "responsibilities," the responsibility of a parent to support his or her child remains intact after parental rights have been terminated. In support of its argument, DSS points to Chapter 13 of Title 63.1, relating to "Support of Dependent Children and their Caretakers," which expressly provides that parental responsibilities shall terminate upon adoption. Thus, DSS argues that because the statutory scheme provides for termination of the responsibility to provide child support only upon a child's adoption, we should infer that the legislature did not intend to terminate the support responsibility upon the termination of parental rights. Accordingly, DSS argues that Fletcher, whose parental rights had been terminated, had the ongoing responsibility to support her children while they were in DSS's custody or in foster care and to reimburse DSS within Fletcher's support guideline ability for the public support paid for the children.

Code § 16.1-283, which sets forth the grounds and procedures by which the Commonwealth may involuntarily terminate a parent's rights to his or her child, does not mention a parent's obligation or responsibility to provide financial support for a child.  However, the sole purpose of that statute is to define how and under what circumstances the Commonwealth may sever the natural bond between a parent and his or her child or the child and his or her parent.  The statute does not address the issue of support.  Furthermore, the statute does not address a parent's responsibility to provide his or her child with the necessities of life – food, clothing or shelter.  The statute is also silent as to other parental rights and responsibilities, including rights of inheritance or parental rights to a minor's wages or the responsibility of a child to support his or her elderly parents.

Although Code § 16.1-228 defines "'Residual parental rights and responsibilities'" as "all rights and responsibilities remaining with the parent after the transfer of legal custody or guardianship of the person, including but not limited to the right of visitation, consent to adoption, the right to determine religious affiliation and the responsibility for support," that code section does not suggest that any "rights" or "responsibilities" exist after the legal bond between a parent and child has been terminated.

Because the statutes do not address the issue before us, we look to case law to decide the question.  The issue that DSS presents is whether severing the legal tie between a parent and child extinguishes a natural parent's responsibility to support his or her child.  Although no Virginia appeals court has directly decided this issue, other jurisdictions have either directly or indirectly addressed whether a parent whose parental rights have been terminated has a continuing responsibility to support his or her child.  The Kansas Supreme Court held that "a person who has relinquished parental rights through . . . a voluntary termination of parental rights, or an involuntary severance of parental rights is no longer a parent."  State of Kansas, Sec'y of Soc. and Rehab. Servs. v. Clear, 804 P.2d 961, 967 (Kan. 1991).  The Kansas court noted that rights and responsibilities "arising from the relationship of parent and child are generally reciprocal."  Id. at 965 (citing Roelfs v. Wallingford, Inc., 486 P.2d 1371, 1376 (Kan 1971) (holding that judicial severance of parental rights terminated child's right to receive worker's compensation benefits upon father's death, and explaining that upon "permanently depriving a parent of parental rights there remains no legal obligation of support")).

In Coffey v. Vasquez, 350 S.E.2d 396 (S.C. App. 1986), the South Carolina Court of Appeals stated that "[t]he duty of a parent to support his or her minor child is often viewed as correlative to the parent's rights in and to the child."  Id. at

397 (citing Walker v. Walker, 167 S.E. 818 (N.C. 1933); 59 Am. Jur. 2d Parent & Child 67A (1971 & 1978 Cum. Supp.)). "Indeed, the term 'parental rights,' in the context of termination proceedings, has been construed to include both parental rights and parental obligations." Id. (citing Anguis v. Superior Court, 429 P.2d 702, 705 (Ariz. Ct. App. 1967)). Thus, the South Carolina Court of Appeals held that "a parent's obligation to feed, clothe and otherwise support a child, being correlative to the parent's rights in and to the child, does not exist where the parent's reciprocal rights in and to the child have been terminated." Id. at 398 (ruling that father whose parental rights had been terminated was "not a person legally chargeable for [the child's] support" under state statute) (emphasis added).

DSS asks us to reject the rationale of the foregoing decisions and instead to adopt the holding from the Maryland Supreme Court in Carroll v. Edelmann, 577 A.2d 14 (Md. 1990), holding that a father whose parental rights had been terminated and who had agreed to repay social services for public assistance had a continuing legal and contractual support obligation. Significant in Carroll is the fact that the father had contracted with social services to continue to provide child support.

In defining the effect of termination of parental rights upon the legal relationship between a parent and child, the

Virginia Supreme Court has held "[t]he termination of parental rights is a grave, drastic, and irreversible action.  When a court orders termination of parental rights, the ties between the parent and child are severed forever, and the parent becomes 'a legal stranger to the child.'"  Lowe v. Department of Pub. Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986) (quoting Shank v. Department of Soc. Servs., 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976)); see also Cage v. Harrisonburg Dep't of Soc. Servs., 13 Va. App. 246, 249, 410 S.E.2d 405, 406 (1991) (holding that Cage erroneously asserted a "right" to visit his children, notwithstanding the termination of all parental rights) (citing Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citing Lowe, 231 Va. at 280, 343 S.E.2d at 72))).  We construe the unambiguous language that termination of parental rights is a complete severance of all ties between the child and parent so as to render them "legal strangers" to include the termination of parental responsibilities as well as any correlative rights. Because a party whose parental rights have been terminated is a "legal stranger" to the child, that parent no longer has a duty to support the child.

Accordingly, we affirm the trial court.

Affirmed.