The Department of Human Resources ("DHR") appeals from a judgment of the Dallas Juvenile Court refusing to terminate the parental rights of I.P, the mother, and E.W., the alleged father, to their son, M.P.
M.P. was born in February 1998 as a premature baby. He has cerebral palsy and hydrocephalus, an abnormal accumulation of cerebrospinal fluid within the ventricles inside the brain. Shunts were installed to help drain excess fluid from M.P.'s head. M.P. remained in the hospital from his birth until May 1998, when he was released into his mother's care.
In September 1998, M.P. was admitted to the hospital because of weight loss and breathing problems. Shortly thereafter, the hospital refused to release M.P. to his mother because M.P.'s doctor was concerned about the mother's care of M.P. Thereafter, DHR was granted temporary custody of M.P., and he was placed in a foster home, where he remained through the trial of this case in January 2003.
In March 2002, DHR filed a petition to terminate the mother's and alleged father's parental rights as to M.P. Because DHR was unable to locate the alleged father's whereabouts and because it was uncertain of the alleged father's paternity, DHR requested that the trial court authorize it to serve the alleged father and any *Page 1122 
other person who might be M.P.'s father with notice by publication. Thereafter, the trial court ordered service by publication, and DHR filed proof of publication in the trial court in July 2002.
On January 13, 2003, the trial court conducted a hearing on DHR's termination petition. The trial court heard the testimony of two witnesses, the mother and Christine Fails-Raymond, a social worker at DHR who had handled M.P.'s case from its inception. Based largely on undisputed testimony, the record reflects that, in addition to other aspects of M.P.'s medical condition, he was unable to walk and could not control his head movement. His care required vocational-rehabilitation services and special equipment to increase his mobility and head control. He also required a special feeding tube that had to be meticulously cared for to prevent infections. M.P. regularly visited doctors in Montgomery, Birmingham, and Selma. At the time of trial, M.P. was approximately five years old; his medical condition had not improved since he was an infant.
The testimony of Fails-Raymond and the mother reflects that DHR attempted to provide the mother with parenting classes and to provide her with services that might enable her to care for M.P. However, the mother did not make herself available for DHR's assistance and DHR was often unable to locate her. The mother regularly failed to keep M.P.'s medical and rehabilitation appointments, and she was unwilling to complete training regarding how to care for M.P. Further, the mother did not complete the parenting-skills classes provided by DHR, and she failed to utilize available counseling services.
The mother visited M.P. twice in the 25 months preceding the trial. The last time that she visited M.P. was more than five months before the trial, and she did not stay for the entire allotted visitation during her last visit. Also, there was no evidence of a significant emotional bond between M.P. and the mother, and the mother had no relatives who were willing to assist her with M.P.'s care.
The alleged father, who did not appear at trial, had never been involved in M.P.'s life.
While the foregoing evidence supported DHR's petition to terminate the parents' parental rights, Fails-Raymond admitted in her testimony that, given M.P.'s condition, it was a "long shot" that DHR would find an adoptive family for M.P. The foster mother, who had cared for M.P. for the four years preceding the trial, had informed DHR that she could not financially afford to adopt M.P.[1] *Page 1123 
The trial court entered a handwritten final judgment on the case action summary sheet as follows:
 "1-13-03. In accordance with section 26-18-7(a)(1), Code of Alabama (1975), the petition of the [Department] of Human Resources to terminate the parental rights of [the mother] and [the father] as the parents of [M.P.] is denied."
As indicated, the entry was dated January 13, 2003.[2]
On February 14, 2003, DHR filed a postjudgment motion. The trial court purported to deny DHR's postjudgment motion on March 3, 2003. On March 10, 2003, DHR filed a notice of appeal. DHR argues that the trial court abused its discretion by denying the petition to terminate the mother's and the alleged father's parental rights because, DHR says, the trial court's decision was not supported by the evidence and was plainly and palpably wrong.
Although no party has questioned this court's jurisdiction, we first consider whether we have jurisdiction over this appeal, because "`jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.'" Wallace v. Tee Jays Mfg.Co., 689 So.2d 210, 211 (Ala.Civ.App. 1997) (quoting Nunn v. Baker,518 So.2d 711, 712 (Ala. 1987)). We conclude that the appeal in this case was untimely and that, therefore, the appeal must be dismissed.
We first note that the postjudgment motion filed by DHR on February 14, 2003, was ineffective to suspend the time for filing a notice of appeal. Although a postjudgment motion pursuant to Rule 59, Ala.R.Civ.P., will suspend the running of the time for filing a notice of appeal, see
Rule (4)(a)(3), Ala.R.App.P., DHR filed its postjudgment motion on February 14, 2003, 32 days after the January 13, 2003, entry of a final judgment by the trial court. Because the postjudgment motion was not filed within 14 days after the entry of the judgment, it was untimely,see Rule 1(B), Ala.R.Juv.P., and, therefore, it did not suspend the running of the time for filing a notice of appeal. See C.D.W. v. State exrel. J.O.S., [Ms. 2010526, August 9, 2002] 852 So.2d 159 (Ala.Civ.App. 2002). Rule 28(C), Ala.R.Juv.P., requires that "[w]ritten notice of appeal shall be filed within 14 days of the date the judgment . . . appealed from is filed in the clerk's office." Rule 4(a)(1), Ala.R.App.P., provides, in pertinent part, that a "notice of appeal shall be filed within 14 days (2 weeks) of the date of the entry" of a final order or judgment issued by a juvenile court. Because DHR's notice of *Page 1124 
appeal was not filed within 14 days of the trial court's entry of a final judgment on January 13, 2003, it was untimely. As a result, this court is without subject-matter jurisdiction and DHR's appeal is due to be dismissed. See Rule 2(A)(1), Ala.R.App.P.
APPEAL DISMISSED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
YATES, P.J., concurs in the result.
[1] The court must apply a two-pronged test in any parental-rights-termination case. First, the court must find that there are "grounds for the termination of parental rights." Second, the court must consider, in light of any viable alternatives, whether termination would be in the child's best interest. See Ex parte Beasley, 564 So.2d 950,954 (Ala. 1990) (also stating that there must be a showing of dependency in a case where a nonparent is the petitioner); D.M.P. v. State Dep't ofHuman Res. [Ms. 2010535, July 25, 2003] 871 So.2d 77 (Ala.Civ.App. 2003) (plurality opinion). Although DHR presented ample evidence from which the trial court could have concluded that grounds for the termination of the parents' parental rights existed, see § 26-18-7(a), Ala. Code 1975, the trial court might have concluded, given the unlikelihood of M.P.'s being adopted and the lack of any evidence of a permanent and stable custodial placement, that DHR had not shown it was in M.P.'s best interest to terminate the parents' parental rights, at least not at the present time. Compare Ex parte Brooks, 513 So.2d 614, 615 (Ala. 1987), (affirming the trial court's decision not to terminate a father's parental rights because termination was not in the best interest of the child, even though both the father and the mother had requested termination of the father's parental rights and the father had abandoned the child, noting, among other things, that termination would sever the child's rights to "support, parental affiliation, and inheritance"), overruled on other grounds by Ex parte Beasley; Glover v. Alabama Dep'tof Pensions Sec., 401 So.2d 786, 788 (Ala.Civ.App. 1981) (reversing the trial court's decision to terminate the parental rights of a mother diagnosed with paranoid schizophrenia because there was little likelihood that the children, who were both mentally retarded, would be adopted and "the future presented after termination and permanent removal of maternal and family ties ha[d] little if any more prospects of serving the best interests of the children than if they were returned to the mother"). Because we must dismiss this appeal, we do not address the question whether the record contains substantial evidence to support such a conclusion.
[2] Based on the other entries on the case action summary sheet, it is apparent that the trial court's January 13, 2003, judgment was written and signed by the trial judge. Although the trial judge filed the same order on February 4, 2003, in a separate writing (which also bears the date January 13, 2003), the trial court's January 13, 2003, judgment constituted the entry of a final judgment. See Rule 58(c), Ala.R.Civ.P. (providing, in part, that "[n]otation of a judgment . . . in the civil docket . . . constitutes the entry of the judgment").