934 So.2d 345 (2006)
Cynthia Ann Arledge BEASNETT and Joy Lynn Arledge, Appellants, Cross-Appellees,
v.
Robert ARLEDGE, Appellee, Cross-Appellant.
No. 2005-CA-00228-COA.
Court of Appeals of Mississippi.
July 18, 2006.
Frank J. Campbell, Vicksburg, attorney for appellants.
Lee Davis Thames, Jackson, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Cynthia Ann Arledge Beasnett ("Beasnett") and Joy Arledge ("Joy") filed *346 a petition for contempt and for judgment for child support arrearage, interest, and attorney's fees against Joy's father and Beasnett's ex-husband, Robert Arledge ("Arledge"). The chancellor awarded Joy and Beasnett $22,963.75 in child support arrearage, representing the amount he failed to pay from November 1982 through October 1984 plus eight percent interest per annum, plus forty-five cents per day from July 1, 2003 through June 18, 2004. The chancellor did not award child support arrearage after October of 1984, because Arledge's parental rights were terminated by joint agreement on October 17, 1984. Aggrieved that the chancellor did not award additional child support arrearage for the period following the termination of Arledge's parental rights, Beasnett and Joy appeal. Arledge cross-appeals, contending that the chancellor erred in awarding eight percent interest per annum. Finding no error, we affirm the decision of the chancellor.

FACTS
¶ 2. Beasnett and Arledge were divorced on November 5, 1982, on the grounds of irreconcilable differences, and Arledge was ordered to pay $200 per month in child support for their daughter, Joy. On September 29, 1984 Beasnett and Arledge filed a joint petition to terminate Arledge's parental rights. On October 3, 1984, because of the gravity of the petition before the court, Joy was appointed a guardian ad litem to make sure her interests were being properly served. Arledge's parental rights were terminated on October 17, 1984. The order terminating Arledge's parental rights did not mention cessation of child support payments. From the time of the divorce decree on November 5, 1982, to the time his parental rights were terminated on October 17, 1984, Arledge did not pay any child support; nor did he pay any child support thereafter. Approximately eighteen years later, in December 2002, Beasnett and Joy filed a petition for contempt and for judgment for child support arrearage, interest, and attorney's fees. The chancellor held that Arledge owed $22,963.75 in child support arrearage, representing the amount he failed to pay from November 1982, through October 1984, plus eight percent interest, plus forty-five cents per day from July 1, 2003 through June 18, 2004. The chancellor additionally awarded Joy attorney's fees and expenses in the amount of $6,355. Aggrieved that the chancellor did not award additional child support arrearage for the period following the termination of Arledge's parental rights, Beasnett and Joy appeal, asserting the following issues: (1) that the termination of Arledge's parental rights in 1984 under Mississippi Code Annotated Section 93-15-103(3)(a) did not terminate Arledge's responsibility to pay child support thereafter; (2) that summary judgment was not appropriate; and (3) that the chancellor erred as a matter of law by failing to have a contempt hearing and failing to find Arledge in contumacious contempt for failing to pay child support. Arledge cross-appeals, contending that the chancellor erred in awarding eight percent interest.

ISSUES AND ANALYSIS

I. Whether the termination of parental rights under Mississippi Code Annotated Section 93-15-103(3)(a) terminates the father's responsibility to pay child support.
¶ 3. In domestic relations cases, this Court's standard of review is limited. A & L, Inc. v. Grantham, 747 So.2d 832, 838(¶ 18) (Miss.1999). We will not disturb the findings of a chancellor "unless manifestly wrong, clearly erroneous, or if the chancellor applied the wrong legal standard." *347 Id. This Court reviews a chancellor's interpretation of the law under a de novo standard. Isom v. Jernigan, 840 So.2d 104, 106(¶ 6) (Miss.2003).
¶ 4. The case and statutory law in Mississippi is sparse regarding whether a parent's obligation to pay child support terminates when his parental rights are voluntarily terminated. Mississippi Code Annotated Section 93-15-103(2) provides:
The rights of a parent with reference to a child, including parental rights to control or withhold consent to an adoption, and the right to receive notice of a hearing on a petition for adoption, may be relinquished and the relationship of the parent and child terminated by the execution of a written voluntary release, signed by the parent, regardless of the age of the parent.
Miss.Code Ann. § 93-15-103(2) (Rev.2004) (emphasis added). In McCracking v. Champaigne, 805 So.2d 586 (Miss.Ct.App. 2002), this Court reviewed a chancellor's decision which held that "while McCracking's relationship with his eldest daughter had deteriorated, that did not relieve him of the responsibility to pay child support." McCracking, 805 So.2d at 590(¶ 12). In so holding, the chancery court stated that "the public policy of this State does not countenance the voluntary termination of parental rights for the sole purpose of avoiding child support." Id. at (¶ 13) (emphasis added). This Court stated that the record supported the chancellor's findings and found no abuse of the chancellor's discretion. Id. at (¶ 14). While not a direct holding by this Court, our support of the above quoted language in McCracking indicates what seems an obvious conclusion: that it is inherent in the voluntary termination of parental rights that the obligation to pay child support ends. Further, as is clear from Mississippi Code Annotated Section 93-15-103(2), the voluntary termination of parental rights completely and utterly extinguishes the parent-child relationship. When the parent-child relationship terminates, not only are the rights of the parent with regard to the child terminated, but the reverse is also true, so long as such termination is not sought simply to evade the obligation to pay child support.
¶ 5. It would be against public policy to allow voluntary termination of parental rights as a mere proxy for avoiding the responsibility to pay child support, but there is no evidence that this is the situation in the case sub judice. The order terminating Arledge's parental rights was approved by both Beasnett and Joy's guardian ad litem. The chancellor sub judice found that the chancellor who originally granted the termination of Arledge's parental rights did so only after considering the issue of future child support. In the parental rights termination proceedings, Joy's guardian ad litem stated:
the Plaintiff, Cynthia Ann Arledge [Beasnett], has provided and continues to provide a stable and nuturing [sic] home environment, [and] has sufficient income to support [Joy] and provide for all [her] needs ... in a satisfactory manner and thus the termination of the parental rights of Robert Charles Arledge has no detrimental affect [sic] whatsoever on the well being of the child.
As the chancellor sub judice stated, "It is clear that the expectation of [the chancellor granting the termination of parental rights] was that there would be no obligation on the part of the father to pay child support after the termination of his parental rights."
¶ 6. Additional support for the view that termination of parental rights terminates the obligation to pay child support appears in Mississippi Code Annotated Section 43-15-17(1) (Rev.2004), which states:

*348 Upon court order, the parent(s) shall be responsible for reimbursing [Mississippi Department of Human Services] for any foster care payments made on behalf of his or her child, based upon financial ability to pay, until such time as there is a termination of parental rights regarding the child, or the child is adopted.
Here, the legislature appears to list two clear events that terminate the obligation to pay child support (although the application of this particular section of the Mississippi Code is narrow): (1) adoption of the child; and (2) the termination of parental rights.
¶ 7. Furthermore, there is scholarly support for the view that termination of parental rights terminates the responsibility to pay child support. See Deborah Bell, Child Support Orders: The Common Law Framework-Part II, 69 MISS. L.J. 1063, 1079 (2003) ("A parent's support obligation ceases when parental rights are terminated either by consent or as a result of a termination action"). This is also the view of our sister state of Colorado, as the Mississippi Supreme Court notes (quoting the United States Supreme Court) in the following excerpt:
"In Colorado, for example, it has been noted: '[Upon termination of parental rights, t]he child loses the right of support and maintenance, for which he may thereafter be dependent on society; the right to inherit; and all other rights inherent in the legal parent-child relationship, not just for [a limited] period..., but forever.'"
Natural Father v. United Methodist Children's Home, 418 So.2d 807, 810 (Miss. 1982) (quoting Santosky v. Kramer, 455 U.S. 745, 760 n. 11, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (quoting In re K.S., 33 Colo.App. 72, 515 P.2d 130, 133 (1973))). Also illustrative of this view is Virginia v. Fletcher, 38 Va.App. 107, 562 S.E.2d 327 (2002), in which the court noted the view of the Virginia Supreme Court on the matter:
In defining the effect of termination of parental rights upon the legal relationship between a parent and child, the Virginia Supreme Court has held "[t]he termination of parental rights is a grave, drastic, and irreversible action. When a court orders termination of parental rights, the ties between the parent and child are severed forever, and the parent becomes a `legal stranger to the child.'"
Fletcher, 562 S.E.2d at 329 (citations omitted); see also Roelfs v. Wallingford, Inc., 207 Kan. 804, 486 P.2d 1371, 1376 (1971) (holding that when parent is permanently deprived of parental rights, "there remains no legal obligation of support"); Coffey v. Vasquez, 290 S.C. 348, 350 S.E.2d 396, 398 (Ct.App.1986) ("[A] parent's obligation to feed, clothe and otherwise support a child, being correlative to the parent's rights in and to the child, does not exist where the parent's reciprocal rights in and to the child have been terminated").
¶ 8. Thus, while there is very little statutory or case law on this matter in Mississippi, we find that it is an inherent aspect of voluntary termination of parental rights that, just as the entire parent-child relationship terminates, so too does the responsibility to pay child support, so long as the best interests of the child are preserved.[1] Accordingly, we hold that the chancery court was not in error in holding that Arledge's obligation to pay child support *349 ceased when his parental rights were terminated.

II. Whether summary judgment was appropriate.
¶ 9. This Court reviews de novo a trial court's grant of summary judgment. Owens v. Thomae, 904 So.2d 207, 208(¶ 7) (Miss.Ct.App.2005). Summary judgment is proper if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Mozingo v. Scharf, 828 So.2d 1246, 1249(¶ 5) (Miss.2002). If, however, any genuine issue of material fact exists, the grant of summary judgment is improper and this Court will reverse. Id. at 1249-50 (¶ 5).
¶ 10. Beasnett has presented to us no issue of genuine material fact as to make the chancellor's grant of summary judgment on the issue of child support arrearage improper. Even viewing the evidence in the light most favorable to Beasnett, the dispute in this case concerns only the law as to whether the voluntary termination of parental rights terminates the responsibility to pay child support. Because we have adjudication that issue in favor of Arledge, we cannot say that summary judgment was improper. This assignment of error is thus without merit.

III. Whether the chancellor erred as a matter of law by failing to have a contempt hearing and failing to find Arledge in contumacious contempt for failing to pay any child support.
¶ 11. A chancellor's finding of civil contempt is subject to review under a manifest error standard. Dennis v. Dennis, 824 So.2d 604, 608(¶ 7) (Miss.2004). The chancellor sub judice stated,
Although [Arledge] was, at the very least, apparently in contempt for his failure to make child support payments prior to the termination of his parental rights, under the facts of this case, [he] may have reasonably believed that all child support obligations, both past and future, were eliminated by the order terminating his parental rights. Therefore, the Court cannot at this point in time find that Robert Arledge is in willful or contumacious contempt for failing to pay the child support arrearage which accrued up to the date of the termination of his parental rights. However, as previously stated, [Arledge] does owe the vested child support and interest thereon.
We see no manifest error in the chancery court's decision and will not substitute our own judgment for that of the chancellor. Beasnett presents to us no authority persuasively suggesting that the chancellor manifestly erred. This assignment of error is therefore without merit.

IV. Whether the chancellor erred in awarding Joy and Beasnett eight percent per annum interest on the child support arrearage.
¶ 12. Arledge asserts on cross-appeal that he does not owe child support from November 5, 1982 through October 17, 1984. He contends that one of the very reasons his parental rights were terminated was his failure to pay child support. Further, he argues that Beasnett's failure to seek such arrearage for over eighteen years caused the amount he allegedly owed to increase by approximately five times due to accrued interest (from $4,800 to $22,963.75). He argues, citing Mississippi Code Annotated Section 75-17-7 (Supp.2000), that the court is not required to use eight percent interest per annum, but rather only a "fair interest rate." Mississippi Code Annotated Section 75-17-7 states, in relevant part: "All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair, but in *350 no event prior to the filing of the complaint." The language in this statute is fairly deferential to the trial court. We see no manifest error in the chancellor's application of eight percent per annum interest on the child support arrearage. See, e.g., Howard v. Howard, 913 So.2d 1030, 1036(¶ 12) (Miss.Ct.App.2005) (affirming chancellor's award of child support arrearage with eight percent per annum interest). We therefore affirm the decision of the chancery court as to this issue.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED ON DIRECT AND CROSS APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANTS/CROSS-APPELLEES AND APPELLEE/CROSS-APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, AND ROBERTS, JJ., CONCUR.
NOTES
[1] We reiterate, however, that the termination of parental rights may not simply be used as a mechanism for one parent to avoid paying child support. In the case sub judice, however, it is clear that this is not the case, as evidence by the fact that both Beasnett and Joy's guardian ad litem agreed to the termination of Arledge's parental rights. The best interests of the child must be preserved in any case.