MURDOCK, Justice
(dissenting).
The law of Alabama has always understood a termination of parental rights to be a termination of the parental relationship, or the parental status. In this regard, Alabama law has been, and is, no different than the law of other jurisdictions, particularly where a statute does not specifically state otherwise. “[T]he great majority of jurisdictions ... agree that judicial termination of parental rights severs the parent-child relationship to the extent that the parent no longer owes a duty to support the child.” State Dep’t of Human Servs. ex rel. Overstreet v. Overstreet, 78 P.3d 951, 954 (Okla.2003) (citing in support cases from 19 other states including Erwin v. Luna, 443 So.2d 1242, 1244 (Ala.Civ. *1134 App.1983)).[7] See, e.g., Santosky v. Kramer, 455 U.S. 745, 760 n. 11, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (“For a child, the consequences of termination of his natural parents’ rights may well be far-reaching. In Colorado, for example, it has been noted: ‘The child loses the right of support and maintenance, for which he may thereafter be dependent upon society; the right to inherit; and all other rights inherent in the legal parent-child relationship, not just for [a limited] period ..., but forever.’ In re K.S., 33 Colo.App. 72, 76, 515 P.2d 130, 133 (1973).”); see also 59 Am.Jur.2d Parent and Child § 16 (“An order terminating the parental rights of a parent terminates all his rights and obligations with respect to the child and of the child to him arising from the parental relationship.” (emphasis added)); 3 Donald T. Kramer, Legal Rights of Children § 28.02 (2d ed. 1994) (“Termination of a parent’s parental rights ... completely and finally severs the parent-child relationship.” (emphasis added)). This understanding, which I believe long and widely held by the bench and bar of this State, is consistent with pertinent statutes and existing precedent.

I. Statutes and Precedent

The reasoning employed by Judge Moore in his dissenting opinion below, and adopted in the main opinion of this Court, is based upon a comparison and juxtaposition of the terms “parental rights” and “parental responsibilities” in Ala.Code 1975, § 26-18-7, and the term “residual parental rights and responsibilities” in Ala. Code 1975, § 12-15-1(24).[8] Such reasoning, as to statutes with essentially identical language, was rejected in Virginia v. Fletcher, 38 Va.App. 107, 110, 562 S.E.2d 327, 328 (2002), on the ground that, by their express terms, such statutes simply “do not address the issue before us.” I believe the same is true of those terms as used in our statutes.
On a fundamental level, rights and obligations go hand in hand. See, e.g., State v. Dyer, 98 N.H. 59, 62, 94 A.2d 718, 720 (1953)(stating, in the context of a criminal proceeding, “[t]he notion that one has rights without corresponding duties would destroy our scheme of ordered liberty under law, since real freedom and responsibility must go hand in hand. To separate them is to destroy both.”); see also, e.g., Usdin v. State Dep’t of Envtl. Prot., 173 N.J.Super. 311, 329, 414 A.2d 280, 289 (1980)(environmental-law dispute) (“Perhaps it is trite, but nevertheless true: rights and responsibilities must go hand in hand.”). So far as termination-of-parental-rights proceedings are concerned, parental rights and obligations are no different.[9] *1135 E.g., Ex parte Brooks, 513 So.2d 614, 617 (1987) (“We hold that the judgment of the District Court of Jefferson County was correct in concluding that David Carlton Stephenson’s best interests — particularly his right to receive support from his father — would not be protected by termination of the father’s parental rights.”), overruled on other grounds, Ex parte Beasley, 564 So.2d 950 (Ala.1990); Beasnett v. Arledge, 934 So.2d 345, 348 (Miss.Ct.App.2006) (“[I]t is an inherent aspect of voluntary termination of parental rights that, just as the entire parent-child relationship terminates, so too does the responsibility to pay child support, so long as the best interests of the child are preserved.”); Coffey v. Vasquez, 290 S.C. 348, 350, 350 S.E.2d 396, 398 (1986)(“[A] parent’s obligation to feed, clothe and otherwise support a' child, being correlative to the parent’s rights in and to the child, does not exist where the parent’s reciprocal rights in and to the child have been terminated.”); Virginia v. Fletcher, 38 Va.App. 107, 112, 562 S.E.2d 327, 329 (2002) (describing a parent whose parental rights have been terminated as a “legal stranger” to the child who has no obligation to pay child support). Thus, absent some specific legislative statement to the contrary, the main opinion’s reliance on the use of the phrase “termination of parental rights” as being noninclusive of parental “obligations,” is misplaced. As noted, Alabama statutes contain no specific statement to the contrary.[10]
This is not to say that the Alabama Legislature has not made any statement regarding this matter. The provisions of the Alabama Uniform Parentage Act that were in effect at all times pertinent to the present case provide that “[a]s used in this chapter, the term ‘parent and child relationship ’ shall mean the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations.” Ala.Code 1975, § 26-17-2 (superseded, effective January 1, 2009, by Ala.Code 1975, § 26-17-101 et seq.). The recent amendments and commentary to the Alabama Uniform Parentage Act, Ala.Code 1975, § 26-17-101 et seq., are even more enlightening: “Unless parental rights are terminated, a parent- *1136 child relationship established under this chapter applies for all purposes, except as otherwise specifically provided by other law of this state.” Ala.Code 1975, § 26-17-203 (emphasis added). As the commentary to § 26-17-203 states:
“This section may seem to state the obvious, but both the statement and the qualifier are necessary because without this explanation a literal reading of §§ 201-203 [of the Uniform Parentage Act (2002) ] could lead to erroneous statutory constructions. The basic purpose of the section is to make clear that a mother, as defined in § 201(a), is not a parent once her parental rights have been terminated. Similarly, a man whose paternity has been established by acknowledgment or by court adjudication may subsequently have his parental rights terminated.”
(Emphasis added.)[11]
As the main opinion notes, statutes regarding the same subject matter are to be construed in pari materia. Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc., 746 So.2d 966, 988 (Ala.1999); see also United States v. Freeman, 44 U.S. (3 How.), 556, 11 L.Ed. 724 (1845) (“If it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to the words of the former statute, this will amount to a legislative declaration of its meaning and will govern the construction of the first statute.”). Section 26-18-7(a) should be read in pari materia with § 26-17-203.
Until the holding of the main opinion in the present case, Alabama appellate courts have consistently stated that the “termination of parental rights” entails the termination of the parental relationship, including parental obligations such as child support. As this Court stated in Ex parte Brooks, a child’s “right to receive support from his father — would not be protected by termination of the father’s parental rights.” 513 So.2d at 617. See also, e.g., State Dep’t of Human Res. v. I.P., 874 So.2d 1121, 1122 n. 1 (Ala.Civ.App.2003)(citing Brooks in support of the statement that “[although DHR presented ample evidence from which the trial court could have concluded that grounds for the termination of the parents’ parental rights existed, see § 26-18-7(a), Ala.Code 1975, the trial court might have concluded, given the unlikelihood of M.P.’s being adopted and the lack of any evidence of a permanent and stable custodial placement, that DHR had not shown it was in M.P.’s best interest to terminate the parents’ parental rights, at least not at the present time”); C.M. v. D.P., 849 So.2d 963, 966 (Ala.Civ.App.2002) (“[A]s in Brooks, it is not in the child’s best interests to be alienated from any future right to financial support, parental affiliation, and inheritance.” (emphasis added)); In re Beasley, 564 So.2d 959, 960 (Ala.Civ.App.1990) (stating, on remand from the Supreme Court, “Even if the father chooses not to establish contact with his son, the child’s right to receive support from his father remains. See, Brooks. Clearly, the child’s future right to support, including a possible college education (see Ex parte *1137 Bayliss, 550 So.2d 986 (Ala.1989)), and the child’s rights of inheritance would not he protected if the father’s parental rights were terminated.” (emphasis added)); Ex parte University of South Alabama, 541 So.2d 585, 588 (Ala.1989) (“A child has this fundamental right to financial support until its majority or a legal termination of parental rights.”); McDaniel v. Miller, 659. So.2d 640, 642 (Ala.Civ.App.1995) (citing both Beasley and Brooks, and holding that “[t]he child’s right to current and future support, including, possibly, payment of a college education, and the child’s right of inheritance from the father, were apparently never considered, and the child’s rights certainly were not protected” when the trial court terminated the father’s parental rights). The nature and repetition of the statements of our courts over the past 30 years to the effect that a termination of parental rights carries with it the termination of other aspects of the parent-child relationship such as the obligation to pay child support and inheritance is such that it cannot be easily dismissed as mere “assumption” as suggested by the main opinion.
Furthermore, when the legislature adopted the CPA in 1984, the phrase “termination of parental rights” already had been recognized judicially as including the termination of child-support obligations. In Erwin v. Luna, 443 So.2d 1242 (Ala.Civ.App.1983), the father had entered into an agreement with his former wife in which he consented to the adoption of his child and she attempted to waive his obligation to pay child support. Thereafter, the wife did not proceed with the adoption, and an action was instituted seeking child support from the father. The court first noted that the child’s right to receive support could not be waived, even if the waiver was adopted in the court’s decree. The court then stated; “Only if appellant’s parental rights had been terminated, either by adoption or otherwise, would appellant’s support obligations have ceased.” Id. at 1244 (emphasis added). See also Roe v. Conn, 417 F.Supp. 769, 779 (M.D.Ala.1976)(describing the termination of parental rights under Alabama law as “severing] entirely the parent-child relationship).[12]
Perhaps more importantly, this Court must take into account that under Erwin the phrase “termination of parental rights” had a preexisting legal meaning that presumably was known to the legislature when it enacted the CPA in 1984. See City of Pinson v. Utilities Bd. of Oneonta, 986 So.2d 367, 373 (Ala.2007) (“ ‘The Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute,’ Carson v. City of Prichard, 709 So.2d 1199, 1206 (Ala.1998), and ‘we presume “that the legislature does not intend to make any alteration in the law beyond what it explicitly declares.” ’ Ware v. Timmons, 954 So.2d 545, 556 (Ala.2006)(quoting Duncan v. Rudulph, 245 Ala. 175, 176, 16 So.2d 313, 314 *1138 (1944)).”). Thus, contrary to the main opinion’s assumption that the legislature intended for the CPA to provide for the termination of parental rights but not the concurrent termination of parental obligations, we must actually presume the opposite.
Further still, as noted above, Ex parte Brooks, In re Beasley, and the other cases relying on Ex parte Brooks, reflect clear pronouncements from our courts that, so far as they were concerned, the phrase “termination of parental rights” as it was used in the CPA was intended to include the termination of a parent’s obligation to pay child support. The main opinion posits that the language at issue in the aforementioned opinions is dicta, which I will hereinafter address, and that the legislature actually intended the opposite. The latter position cannot withstand scrutiny.
The legislature has thrice amended the CPA since the decision in Ex parte Brooks, yet it has not chosen to correct the alleged error of construction posited by the main opinion. As noted above, “[t]he Legislature, when it enacts legislation, is presumed to have knowledge of existing law and of the judicial construction of existing statutes.” Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 814 (Ala.2003).
“The proper aim of judicial interpretation is to determine the intention of the legislature. We believe it is pertinent to point out that there exists, and has long existed, in this state, a principle that when the legislature readopts a code section, or incorporates it into a subsequent Code, prior decisions of this court permeate the statute, and it is presumed that the legislature deliberately adopted the statute with knowledge of this court’s interpretation thereof.”
Edgehill Corp. v. Hutchens, 282 Ala. 492, 495-96, 213 So.2d 225, 227-28 (1968); see also Ex parte HealthSouth Corp., 851
So.2d 33, 41-2 (Ala.2002) (“Presumably, when the Legislature reenacts or amends a statute without altering language that has been judicially interpreted, it adopts a particular judicial construction.”). Thus, regardless of whether Ex parte Brooks and its progeny reflect what the legislature originally intended, this Court must presume that the legislature has now acquiesced in the construction reflected in those decisions.

II. Ex parte Brooks

The divorced parents in In re Stephenson, 513 So.2d 612 (Ala.Civ.App.1986),
“jointly filed a petition to terminate the parental rights of the father as to David, their two and one-half year old only child. Therein, the father affirmatively stated his desire to surrender any and all of his parental rights and stated that he believed that such action would be in the best interests of the minor child.
“A report to the Department of Pensions and Security was a portion of the evidence in this case. This report concluded that it was in David’s best interests that the father’s parental rights be terminated. There was nothing adverse in the report as to the mother.... David appeared to be well adjusted and happy living with his mother.
[[Image here]]
“The parties were divorced at a time when the mother was about three months pregnant with David. The divorce was largely precipitated when the father attempted to persuade the mother to have an abortion and she refused to do so. The judgment of divorce made no custody award.
“When David was born the father did not visit him in the hospital. As a matter of fact, both parents explicitly testified that the father has never attempted to see David, that he has never visited *1139 with David, that he has never even seen David, that he has never paid any child support or provided any money for the child’s benefit since his birth, and that, while the mother has requested support from the father on many occasions, he has consistently refused to support David. The father did provide $100 towards the mother’s hospital stay.
“The father is twenty-eight years of age. He has been a deputy sheriff for three years. His salary is $741 every two weeks. He owns no real estate but has an equity in his vehicle and has a moderate bank account.
“The mother stated that she wants to terminate the father’s parental rights because he has no interest in David, is not stable, is not child oriented, is short of patience, and has a bad temper. The parents disagree over the child’s religious upbringing as a Jew. The mother is very concerned over bickering about custody and visitation and the effect it might have upon David, who is presently well adjusted.
“The father testified that he desires that his rights as to the child be terminated since the parents disagree upon a number of areas, such as religion, and that it would not be right to emotionally harm David over the father. In that regard, the father swore that it was better for the mother to raise the child and that he has no desire to visit with or to know David. When asked if he would try to visit David in the future, his reply was, ‘Who knows what is in the future?’
“In denying the petition to terminate parental rights, the trial court found that it was not in David’s best interests to terminate his father’s parental rights, there being no evidence of any harm to the child by the father. The trial court further found that David’s future rights to support, inheritance, and paternal affiliation would not be protected by a termination in this matter. The mother appealed. The guardian ad litem who was appointed to represent David’s interests supports the final judgment of the trial court.”
513 So.2d at 612-13 (emphasis added).
On appeal, the Court of Civil Appeals noted that the CPA created a rebuttable presumption that the father had abandoned David, and the court concluded that the presumption
“was not rebutted by an iota of testimony. Even without the benefit of that presumption, the undisputed evidence was that the father has never acted or attempted to act as David’s father in any respect. Two and one-half years of the father’s failure to act, neglect, and behavior as if David did not exist certainly constitutes ample time and clear reasons to terminate his parental rights as to this young child.
“In short, we are clearly convinced after a very thorough study of the undisputed evidence that it is in David’s best interests that the father’s parental rights as to David be terminated. The learned trial court abused its judicial discretion in not doing so.”
513 So.2d at 614 (emphasis added).
On appeal to this Court, the guardian ad litem argued, in part, “that termination of the father’s parental rights in this case is: (1) contrary to the intent of the Alabama Child Protection Act when no adoption is contemplated; (2) contrary to public policy; [and] (3) impermissible when a less drastic remedy would better serve the child’s interests....” Ex parte Brooks, 513 So.2d at 616. In addressing these argument, this Court stated:
“The purpose of the 1984 Child Protection Act is stated in § 26-18-2, which provides, in part:
*1140 “ ‘It is the purpose of this chapter to provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights in such a manner as to protect the welfare of children by providing stability and continuity in their lives, and at the same time to protect the rights of their parents.’
“The trial court concluded that termination of [the father’s] parental rights would not serve David’s best interest. We agree.
“[The mother] asks for termination of her former husband’s parental rights in order to avoid the possibility of future disagreements or a custody conflict with him concerning David. [The father] has shown absolutely no interest in his son and would escape any obligation to support David if his parental rights were terminated. As appellant has ably argued, the 1984 Child Protection Act was not intended as a means for a parent to avoid his obligation to support his child. Were we to concur with the Court of Civil Appeals in this instance, we would satisfy the objectives of the parents at the child’s expense.
“... Termination of the father’s parental rights in this case would seem to us to be an unnecessarily drastic action not supported by clear and convincing evidence. Although we agree that [the father’s] conduct toward his son may satisfy the criteria set forth in Ala.Code (1975), §§ 26-18-3 and 26-18-7(c), as constituting ‘abandonment,’ termination of his parental rights appears to be overwhelmingly for the convenience of the parents. By mutual consent, [the parents] seek to waive David’s right to receive support from his father although the child would receive nothing in return.
[[Image here]]
“Even if [the father] chooses not to establish contact with his son, David’s right to receive support from his father remains. The Child Protection Act of 1984, as we have noted, was not intended as a means for allowing a parent to abandon his child and thereby to avoid his obligation to support the child through the termination of parental rights. The courts of this State will not be used in the furtherance of such a purpose.
“In the absence of clear and convincing evidence that termination of [the father’s] parental rights is the appropriate remedy, we cannot agree with the Court of Civil Appeals that the trial court erred in denying the [parents’] petition. We hold that the judgment of the District Court of Jefferson County was correct in concluding that David Carlton Stephenson’s best interests— particularly his right to receive support from his father — would not be protected by termination of the father’s parental rights. The judgment of the Court of Civil Appeals is, therefore, reversed, and a judgment is rendered denying the termination of parental rights.”
513 So.2d at 616-17 (emphasis added).[13]
According to the main opinion, the stated basis for our holding in Ex parte *1141 Brooks, including our holding “that the judgment of the District Court of Jefferson County was correct in concluding that David Carlton Stephenson’s best interests — particularly his right to receive support from his father — would not be protected by termination of the father’s parental rights,” was dicta. Given the arguments made to this Court in Ex parte Brooks, this Court’s response to those arguments, and this Court’s articulation of what “we hold,” I disagree. The statement concerning the potential termination of support from the father was central to the issue presented and to this Court’s disposition of that issue.
Further, even if the above-described language from Ex parte Brooks were dicta, I could not agree that it should be lightly disregarded (1) because the matter at issue was raised on appeal and addressed by this Court, see Stark v. Watson, 359 P.2d 191, 196 (Okla.1961) (“ ‘Obiter dictum is an expression of opinion by the court or judge on a collateral question not directly involved, or mere argument or illustration originating with him, while judicial dictum is an expression of opinion on a question directly involved, argued by counsel, and deliberately passed on by the court, though not necessary to a decision. While neither is binding as a decision, judicial dictum is entitled to much greater weight than the other, and should not be lightly disregarded.’ ” (quoting Crescent Ring Co. v. Travelers’ Indem. Co., 102 N.J.L. 85, 132 A. 106, 107 (1926))), and (2) because I am convinced that the rationale of Ex parte Brooks reflects a proper understanding of the CPA.
In addition, assuming the above-described language from Ex parte Brooks is dicta, I do not believe this Court could reasonably have expected the legislature to make the fíne distinction between what is dicta and what is not when it enacted the CPA and thereafter amended the CPA three times, particularly since Alabama courts, including this Court, and the bar itself often struggle with what is and what is not dicta in a given case. Certainly the decisions that have relied on Ex parte Brooks over the last 20 years do not lend themselves easily to the conclusion that such decisions are dicta or easily discernible as such. For example, in Ex parte Beasley, 564 So.2d 950 (Ala.1990), this Court overruled that portion of Ex parte Brooks that had required a showing of dependency in the context of a termination-of-parental-rights proceeding involving only the parents as contestants. We also, however, appear to have endorsed the holding from Ex parte Brooks at issue *1142 in the present case by stating that “[t]he merits of the mother’s petition must be tested against the public policy that requires clear and convincing evidence ‘that termination of [a father’s] parental rights [was] the appropriate remedy.’ Brooks, 513 So.2d at 617.” 564 So.2d at 955. Certainly that appears to be what the Court of Civil Appeals concluded because on remand that court stated:
“The guardian contends that the trial court erred in terminating the father’s parental rights in the child in that there were less drastic alternatives than termination available. We agree.
“ ‘Our courts are entrusted with the responsibility of determining the best interest of children who come before them. When a child’s welfare is threatened by continuation of parental rights, the law provides a means for terminating those rights.’ Ex parte Brooks, 513 So.2d 614, 617 (Ala.1987). However, the 1984 Child Protection Act was not intended as a means for a parent to avoid his obligation of support. See Brooks, supra. ‘Convenience of the parents is not a sufficient basis for terminating parental rights.’ Brooks, supra, at 617.
“Here, there was no evidence produced at trial and no argument has been made that Byron (father) has physically harmed or has in any way interfered with the mother’s custody of the child. Rather, the evidence simply shows a father whose visits with his child have been, sporadic. Even if the father chooses not to establish contact with his son, the child’s right to receive support from his father remains. See, Brooks. Clearly, the child’s future right to support, including a possible college education (see Ex parte Bayliss, 550 So.2d 986 (Ala.1989)), and the child’s rights of inheritance would not be protected if the father’s parental rights were terminated.
“Therefore, termination of the father’s parental rights in this case would seem to us to be an unnecessarily drastic action not supported by clear and convincing evidence.”
In re Beasley, 564 So.2d 959, 960 (Ala.Civ.App.1990).

III. Adoption Issues

The main opinion also purports to find support for its position in the Alabama Adoption Code, including Ala.Code 1975, § 26-10A-29(b), which states: “Upon the final decree of adoption, the natural parents of the adoptee, except for a natural parent who is the spouse of the adopting parent are relieved of all parental responsibility for the adoptee and will have no parental rights over the adoptee.”
A similar line of argument was addressed and correctly rejected in County of Ventura v. Gonzales, 88 Cal.App.4th 1120, 106 Cal.Rptr.2d 461 (2001).
“Finally, the County relies on [Cal.] Family Code section 8617, which states, ‘[t]he birth parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the adopted child, and have no right over the child/ It argues that under this section, a parent must pay support until the child is adopted. Section 8617 is a general statute applicable to all adoptions of unmarried minors, not merely those that follow a termination of parental rights. The declaration that adoption ends a birth parent’s obligations in all cases does not resolve whether a termination order itself ends a parent’s duty to provide support.”
88 Cal.App.4th at 1125, 106 Cal.Rptr.2d at 465.
Like the adoption code at issue in Gonzales, the Alabama Adoption Code applies to several types of adoption situations, *1143 only a portion of which involve termination proceedings. Under the Alabama Adoption Code, adoptions can be either voluntary on the part of the parents (i.e., consensual adoptions) or involuntary, such as where the termination of parental rights is required. In part, the latter category can be further broken down into (1) those cases in which termination of parental rights has already occurred and thus no consent to adoption is required, see Ala. Code 1975, § 26-10A-10(1); (2) those cases in which no formal termination of parental rights is required because consent to the adoption is irrevocably implied, see Ala.Code 1975, § 26-10A-10(1); and (3) those cases in which a termination of parental rights must be obtained before the adoption may proceed, see Ala.Code 1975, § 26-10A-3 (“If any party whose consent is required fails to consent or is unable to consent, the proceeding will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of termination of parental rights.”).
Like the Gonzales court, I cannot conclude that provisions such as § 26-10A-29(b) reflect a legislative intent to “resolve whether a termination order itself ends a parent’s duty to provide support.” 88 Cal. App.4th at 1125, 106 Cal.Rptr.2d at 465.

TV. Unintended Consequences

In addition to the foregoing, I am concerned that the holding of the main opinion will result in unintended consequences that have heretofore not been an issue because of our courts’ and our legislature’s understanding of the state of the law as discussed above. For example:
A.The decision of the main opinion is not limited temporally, and thus appears to be applicable retroactively. Should we not expect a substantial increase in child-support-arrearage filings in light of the new-found rights established by the main opinion?
B. If the position of the main opinion is correct, i.e., that the termination of parental rights does not terminate parental obligations or the child’s “rights” vis-á-vis the parent, what other parental obligations and/or children’s “rights” remain in place after termination? What about the child’s right to associate with the parent? May a child now sue to establish 'his right to associate with his parent even if á final judgment terminating parental rights was entered years earlier? What about the parent’s obligation to provide for the proper education of the child, including post-secondary education, and who is to decide what proper education entails? What about the parent’s obligation’ to provide for the health-care needs of the child and who is decide what that entails? What about the parent’s obligation to provide social, moral, and religious guidance for the child, and how is that to be addressed? On what principled ground are we to conclude that such obligations, or a child’s right of inheritance, do not likewise continue beyond the termination of a parent’s parental rights?
C. The position of the main opinion reduces a risk that has heretofore been understood as being part of the balancing of risks and benefits relating to the issue of termination of parental rights (i.e., the loss of support from the other parent), and therefore will likely increase the use of termination proceedings by parents against one another. It might also increase the incentive for DHR to seek to terminate parental rights even in the absence of a reasonably foreseeable adoptive placement.[14]
*1144 D. The position of the main opinion could increase contested termination proceedings and create additional delay in adoption proceedings. For example, some “deadbeat” parents who would otherwise not be inclined to fight the termination of their parental rights because the termination would also eliminate their child-support obligation, will now fight termination of their parental rights.[15]
The foregoing list is not exhaustive. It demonstrates, however, that the position adopted by the main opinion will entail a fundamental change of course that has not been anticipated by our courts or by the legislature and that may have unknown consequences in both termination proceedings and adoption proceedings. Under the circumstances, I submit that if such a change of course is to be had, the legislature is the deliberative body that should balance the various interests at issue and make the determination of how best to proceed, rather than this Court. See Berdeaux v. City Nat’l Bank of Birmingham, 424 So.2d 594, 595 (Ala.1982). Compare Tex. Fam.Code Ann. § 154.001(a-1) (explicitly providing that a parent continues to have certain obligations toward his or her child after that parent’s parental rights are terminated.).

V. Conclusion

The law of Alabama allows for the termination of parental rights either when a parent is “unwilling” adequately to parent his child or when a parent is “unable” adequately to parent his child. The Alabama statute addressing the grounds for the termination of parental rights states that a court “may terminate the parental rights of the parents” where
“the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future.”
Ala.Code 1975, § 26-18-7(a) (now amended and renumbered as § 12-15-319).
The main opinion states that, to hold other than it does, “would reward the most egregious cases of parental abuse and neglect by that parent’s not having the burden of paying child support.” 39 So.3d at 1133. Nothing in my position or in what I consider to have been the law of Alabama until today is or has been motivated by any desire to accommodate parents of the nature described. Rather, our law, as I and others have always understood it, derives from the fundamental correlation between rights and responsibilities and a corresponding understanding, sound in my view, of what our decisions and the legislature have always intended by providing for the termination of “parental rights.” Also, to *1145 the extent the main opinion focuses on such parents, I believe it looks past the variety of circumstances that can lead to the termination of parental rights, including, for example, mental incompetence or physical disability that “render [the parent] unable to properly care for the child ... [for] the foreseeable future.” See, also, supra note 14. Even for parents who through no fault of their own have suffered the heart-wrenching loss of their parental rights, the main opinion’s position will add the burden of supporting the child without any right to the child’s association.
Bad facts make bad law. This is a case with bad facts. The father is not a sympathetic figure. I am concerned, however, that we not discard a legal principle that is so fundamental and so well accepted, a principle that is more palatable in those cases where the parent is simply “unable” rather than “unwilling,” and the abandonment of which holds the potential for both jurisprudential and practical consequences that are unintended and unforeseen.
For the foregoing reasons, I respectfully dissent.

. In Overstreet, the statute at issue specifically provided that the termination of parental rights “shall not terminate the duty of either parent to support his or her minor child” until such time as the child is adopted. 78 P.3d at 952 n. 1. (quoting Okla. Stat. tit. 10, § 7006-1.3). Alabama's statutes have no language resembling the specific provisions of the statute discussed in Overstreet.

. The Child Protection Act, § 26-18-1 et seq., Ala.Code 1975, and the Alabama Juvenile Justice Act, § 12-15-1 et seq., Ala.Code 1975, have been combined, revised, and reorganized, effective January 1, 2009. The new Alabama Juvenile Justice Act is codified at § 12-15-101 et seq. See Act No. 2008-277, Ala. Acts 2008.

.I must concede that I have had some difficulty in grasping the logic of the main opinion’s position, particularly when articulated in other contexts. Does the law conceive that a court can terminate a partner's rights as to a partnership, but that the former partner will continue to have the status of a partner and the ongoing obligations of a partner? That a court can terminate a person's rights as an employee, but that the former employee will continue to have the status of an employee and the ongoing obligations of an employee? That a court can terminate a trustee’s rights *1135 to act as trustee, but that the former trustee will continue to have the status of trustee and the ongoing obligations of a trustee?

. The main opinion states that "Alabama has never held ... that a fit parent should be prevented from visitation with his or her child simply because the parent is unable to pay child support.” 39 So.3d at 1129. I submit this example is inapt. The posited scenario does not comprehend a lack of duty to pay child support, only a lack of ability.
Likewise inapposite is the main opinion's reliance upon the fact that “a parent remains obligated to pay child support even when the parent has no custodial rights and the child refuses visitation or when the noncustodial parent has no contact with the child.” 39 So.3d at 1127. In these situations, all parental rights are not terminated, and the law's recognition of the parent-child relationship remains intact.
I further note that there is nothing in the above examples that would prevent the parent from remedying his or her fault and regaining the opportunity to exercise his or her parental rights. The issue before this Court, however, is whether the permanent severance of all parental rights terminates the parent-child relationship and thus permanently términates all parental obligations. I contend that it does. The alternative is a duty-filled, but right-free "parent” who can. «ever regain his or her rights. Thus, the mother whose parental rights are terminated because of a drug problem, and who subsequently overcomes that problem and proves to be a model citizen and parent, must continue to pay child support (and perhaps, in the absence of any principled reason otherwise, continue to have “parental responsibilities” relating to inheritances or other matters), though she can never regain any right to associate with her child.

. The commentary continues:
"The qualifier, ‘as otherwise provided by other law of this State,' is necessary because other statutes may restrict rights of a parent. For example, UPC (1993) § 2-114(c) precludes a parent of a child (and the parent’s family) from inheriting from the child by intestate succession 'unless that natural parent has openly treated the child as his [or hers] and has not refused to support the child.' ”
The obligation to pay child support is neither a parental right, as discussed in the commentary, nor is its continuance "specifically provided” in the CPA.

. This principle also is reflected in the precedent of other courts of the era. See, e.g., In re K.S., 33 Colo.App. 72, 76, 515 P.2d 130, 132-33 (1973) ("[Tjermination of parental rights, so called, severs permanently, not only the rights and obligations of the parent relative to the child, but those of the child as well. The child loses the right of support and maintenance, for which he may thereafter be dependent upon society; the right to inherit; and all other rights inherent in the legal parent-child relationship, not just for the period during which he is subject to the code, but forever.”); Roelfs v. Sam P. Wallingford, Inc., 207 Kan. 804, 811, 486 P.2d 1371, 1376 (1971) (termination of parental rights is intended as "a final and permanent settlement of all problems of custody and supervision by a complete and final divestment of all legal rights, privileges, duties, and obligations of the parent and child with respect to each other”).

. The main opinion states that I am arguing that there might be additional delay in adoption proceedings "resulting from a possible increase in termination proceedings.” 39 So.3d at 1131. My point, however, is that termination proceedings will now more likely be contested by parents who heretofore were "filtered” out of the system by their willingness to forgo a relationship with their children in order to avoid a child-support payment.