This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38424

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**

Petitioner-Appellee,

v.

**ARSENIO B.,**

Respondent-Appellant,

and

**BRITTANY T.,**

Respondent,

**IN THE MATTER OF CHRISTOPHER B. and MALACHI B.,**

Children.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Allen R. Smith, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Robert Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Abeyta Legal LLC
Lisa R. Abeyta
Albuquerque, NM

Guardian Ad Litem

**DECISION**

**BOGARDUS, Judge.**

**{1}** Arsenio B. (Father) appeals the district court's order terminating his parental rights to his children, Christopher B. and Malachi B (Children). He argues that the Children, Youth and Families Department (CYFD) did not overcome its burden to prove under NMSA 1978, Section 32A-4-28(B)(2) (2005) that (1) the conditions and causes of Father's neglect were unlikely to change in the foreseeable future; and (2) it made "reasonable efforts" to assist him in his ability to properly care for Children. He also argues that, given that Children's adoption was not imminent, the order should be reversed in order to give him more time to undergo substance-abuse treatment and regain the ability to properly care for them. Unpersuaded, we affirm.

**BACKGROUND**

**{2}** We set out only the pertinent facts and law in connection with the issues analyzed because the parties are familiar with the facts and procedural posture of this case and because this is a non-precedential expedited bench decision. *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

**{3}** CYFD received a report on January 11, 2018 suggesting that Children were victims of physical abuse. Follow-up interviews revealed that the adult children of Father's girlfriend, who lived with Children, were hitting them. The next day, CYFD and law enforcement personnel went to an apartment where Father and Children lived, to investigate. There they observed unsanitary conditions, a water shut-off, and minimal food. They also learned that the apartment's tenants, including Father and Children, were being evicted. That evening, Children were taken into state custody. After having later been released into Father's custody for a brief period, Children returned to state custody and were placed in foster care, where they remained for the duration of the proceedings.

**{4}** CYFD filed an abuse and neglect petition on February 5, 2018, alleging that (1) Children's mother had been out of contact with the family for a long time and had therefore abandoned them; and (2) Father had neglected them, by failing to provide Children with safe, appropriate, and stable shelter. Father eventually pleaded no contest to the neglect charge. At a February 16, 2018 custody hearing, the district court ordered

Father to undergo psychosocial and neuropsychological evaluations, a substance abuse assessment, and random drug screening.

**{5}** Some of these actions were ordered again following the March 26, 2018 abuse and neglect hearing, as part of the CYFD case plan adopted by the district court. The plan laid out "[s]ervices and steps to promote improved conditions in the home and facilitate reunification." These included that Father (1) participate in a CYFD-scheduled neuropsychological evaluation and, with CYFD's assistance, follow subsequent recommendations; (2) complete a CYFD-scheduled substance abuse assessment and, with CYFD's assistance, follow subsequent recommendations; (3) participate in CYFD-arranged, random drug screening; (4) participate in CYFD-arranged visits with Children; (5) complete a parenting assessment and, with CYFD's assistance, follow subsequent recommendations; (6) sign CYFD-provided releases for information to assess compliance and treatment progress; (7) secure and maintain safe and stable housing; (8) participate in monthly meetings with a CYFD case worker; and (9) complete a CYFD-scheduled domestic violence assessment and, with CYFD's assistance, follow subsequent recommendations.

**{6}** At the May 14, 2018 initial judicial review hearing, the district court found that CYFD had made reasonable efforts to implement the case plan. In contrast, Father had made minimal efforts to comply with the plan, according to the court, and had made "minimal progress toward alleviating or mitigating the causes and conditions which brought the children into care." Father had maintained monthly contact with his CYFD case worker, but had not participated in the neuropsychological evaluation, substance abuse assessment, drug screening, or domestic violence assessment; furthermore, he did not follow up with a referral by CYFD for mental health care or the referral for parenting classes. The court also noted that Father participated in twelve out of twenty scheduled visits with Children.

**{7}** Father's compliance issues continued to the time of the next hearing, held on November 19, 2018, which was a judicial review of the case plan as it concerned Children's mother. She had not been located and was absent at the hearing, but Father was present. The district court again found that CYFD had made reasonable efforts to implement the case plan, but that Father's efforts at compliance were minimal. Specifically, he still had not participated in the neuropsychological evaluation, substance abuse assessment, domestic violence assessment, parenting assessment, or drug screening, nor had he established and maintained safe and stable housing. He also had not maintained consistent contact with Children, and had no contact with them between May 14, 2018 and September 13, 2018.

**{8}** On January 31, 2019, CYFD moved to terminate both parents' parental rights. The statutory grounds were, in the case of Children's mother, abandonment, and in the case of both parents, abuse or neglect that was unlikely to change in the foreseeable future.

**{9}**     The district court held a judicial review and first permanency hearing on February 18, 2019. It found that CYFD's efforts at implementing the case plan were still reasonable but that Father's efforts at compliance remained minimal. He had, however, made "diligent, good faith" efforts to maintain contact with Children and had taken one drug test—though it came back positive for the presence of THC. Despite this, the court found that Father had made no progress toward alleviating or mitigating the conditions that brought Children into state custody.

**{10}**     A hearing on CYFD's termination of parental rights motion began on March 26, 2019, and resumed on April 22, 2019. Father testified there that he had not participated in the case plan until the end of January 2019, but had started making many of the calls and appointments, as ordered in the plan, in the two weeks before the hearing. At the end of the hearing, the district court ruled in favor of termination.

**DISCUSSION**

**{11}**     Father essentially challenges the sufficiency of the evidence that CYFD put forth to meet its burden for terminating his parental rights. We thus consider the district court's findings in relation to the "substantial evidence" standard. *See, e.g.*, *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶¶ 22-31, 132 N.M. 299, 47 P.3d 859 (reviewing for substantial evidence the district court's "reasonable efforts" finding). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 36, 421 P.3d 814 (internal quotation marks and citation omitted). In determining whether the substantial evidence standard is met, we do not reweigh all the evidence presented to the district court or "substitute our judgment for that of the [district] court as to any factual matter"—but rather defer to the court's conclusions. *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. Overall, "we view the evidence in the light most favorable to support the [district] court's findings and conclusions of law." *State ex rel. Children, Youth & Families Dep't v. David F., Sr.*, 1996-NMCA-018, ¶ 34, 121 N.M. 341, 911 P.2d 235.

**{12}**     Because the standard of proof applicable to the termination of parental rights determination is clear and convincing evidence, the district court's findings are valid only if they meet that standard. *See Keon H.*, 2018-NMSC-033, ¶ 37 (recognizing that a parent cannot be deprived of parental rights without due process of law and that "[d]ue process requires that findings necessary to terminate parental rights be supported by clear and convincing evidence"). "Clear and convincing evidence means evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *Id.* (internal quotation marks and citation omitted).

**I.     CYFD Presented Sufficient Evidence to Support the District Court's "Reasonable Efforts" and "Unlikely to Change" Findings**

**{13}** Father first argues that his parental rights should not be terminated because the district court erred in concluding that CYFD made reasonable efforts to assist with reunification. Specifically, Father argues that (1) he substantially complied with the case plan beginning in January 2019, which "negates evidence of any previous noncompliance"; and (2) CYFD failed to make reasonable efforts "because it did not provide him with an inpatient treatment program necessary to address his addiction to substances, namely methamphetamines" and also because it did not "give him adequate time to engage in those services." Notably, Father does not refute the May 14, 2018, November 19, 2018, and February 18, 2019 district court findings of CYFD's "reasonable efforts" and Father's "minimal efforts" and "minimal" or "no" progress. Rather, what he seems to argue is that his recent initial efforts to stop using substances and participate in services were enough to undermine or reverse those findings.

**{14}** CYFD contends that the evidence in support of the district court's reasonable-efforts finding meets the clear and convincing standard. CYFD highlights evidence showing that Father made minimal effort to comply with the case plan, particularly before January 2019, but even also past that point.

**{15}** These arguments are based on the provision in Section 32A-4-28 under which CYFD pursued the termination of Father's rights:

> The court shall terminate parental rights with respect to a child when . . . the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the court finds that *the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future* despite *reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child*.

Section 32A-4-28(B)(2) (emphasis added).

**{16}** "[W]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Keon H.*, 2018-NMSC-033, ¶ 41 (internal quotation marks and citation omitted). CYFD's efforts need only be reasonable, not perfect. *See id.* ¶ 43. Moreover, the department need not do "everything possible" to assist a parent; instead the focus is on whether it has done at least the minimum required by law. *See Patricia H.*, 2002-NMCA-061, ¶ 28.

**{17}** We first note that the record contradicts Father's contention that CYFD made no effort to help him access inpatient treatment. Father himself testified that his caseworker arranged for him to check into an inpatient, substance-abuse treatment facility; but he did not go, he said, because the timing was inconvenient.

**{18}** We also note that Father's argument focuses much on his own actions (and CYFD's response to them), when in fact the proper focus of a termination decision is on

the child's welfare. NMSA 1978, Section 32A-4-22(C) (2016) states that "[r]easonable efforts shall be made to preserve and reunify the family, with the paramount concern being the child's health and safety"; and Section 32A-4-28(A), states that "[i]n proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child." Here, the district court found that termination of Father's parental rights would promote Children's physical, mental, and emotional welfare. In light of this finding and the statutory emphasis on the Children's needs, Father's focus on his own needs—needs for more treatment opportunities and more time—is misguided.

**{19}** Finally, Father points to evidence of his late, partial compliance with the case plan and implies that his actions gave rise to new CYFD obligations, obligations that, as presumably not undertaken, made CYFD's previous efforts inadequate. To adopt this conclusion would require us to read into the statute a provision not there—namely, that if reasonable efforts are made but ignored until as late as after termination proceedings begin, they become unreasonable, and CYFD must then redouble its efforts. Father's position is unsupported by the law. All the statute requires is that CYFD make reasonable efforts, not that it do "everything possible." *Patricia H.*, 2002-NMCA-061, ¶ 28.

**{20}** Overall, we agree with CYFD that there was clear and convincing evidence that it made reasonable efforts to adjust the conditions that rendered Father unable to properly care for his children. Considering the long period during which Father's cooperation with the case plan was minimal or non-existent, along with the degree of challenge associated with overcoming the housing and substance-abuse problems interfering with his ability to meet Children's needs, a reasonable mind could conclude that CYFD's efforts were reasonable. This is true even in light of Father's last-minute efforts to begin complying with the case plan. Much of CYFD's role in the plan depended on Father's independent actions, which he largely failed to undertake until the two weeks before the termination hearing. Given this timing, there was not much CYFD could do to assist Father in making the large-scale, far-reaching changes needed for him to be able to properly care for his children. All considered, CYFD's efforts throughout the proceedings were reasonable.

**{21}** Father also briefly challenges the district court's finding that the conditions and causes of his neglect of Children were unlikely to change in the foreseeable future. In response, CYFD highlights evidence in support of the finding—namely, that at the time of the hearings, Father was still living with his girlfriend, where issues similar to those that brought Children to CYFD's attention were ongoing.

**{22}** This Court has interpreted Section 32A-4-28(B)(2)'s "unlikely to change" provision as referring to "corrective change within a reasonably definite time or within the near future." *Patricia H.*, 2002-NMCA-061, ¶ 34 (internal quotation marks and citation omitted). Along these lines, the district court is not required "to place the children indefinitely in a legal holding pattern." *Id.* (internal quotation marks and citation omitted).

**{23}** We agree with CYFD that the "unlikely to change" finding has adequate support in evidence. Father disputes the finding by highlighting evidence that he was beginning to overcome his substance abuse problem, but his challenge misses the mark: the particular conditions and causes of the neglect had less to do with Father's substance use and more to do with his failure "to assure that the children had safe, stable, and appropriate shelter." The district court found at the termination hearing that Father still had not established safe, stable, and appropriate shelter for Children. Granted, the substance-abuse issues of Father and his girlfriend, with whom he was living at the time of the hearing, bear on the safety, stability, and appropriateness of Children's shelter—but even in that respect, the evidence is contrary to Father's position. The court found that his girlfriend had "a long history of daily drug use and [was] not participating in any treatment for substance abuse." The court also found that Father had "a significant problem with substance abuse" and had not completed any treatment.

**{24}** Father does not challenge these findings, which reflect clear and convincing evidence that could lead a reasonable mind to conclude that the causes and conditions of Children's neglect were unlikely to change. We therefore deem them conclusive. *See Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 18, 115 N.M. 181, 848 P.2d 1108 ("[A]n appellant is bound by the findings of fact made below unless the appellant properly attacks the findings[.]"). Importantly, there was no indication that Father's housing situation would improve—much less in the near future or within a reasonably definite time. We therefore affirm the "unlikely to change" aspect of the findings underlying termination.

## II. Considerations Surrounding the Likelihood of Adoption Do Not Mandate Reversal

**{25}** Father next argues that termination was improper because (1) there was evidence at the termination hearing suggesting that Children's foster parents were unwilling to adopt them; (2) he began complying with the case plan in the spring of 2019; and (3) in light of these circumstances, the district court should have allowed Father more time to make the changes necessary to regain custody of Children. The only legal authority Father cites in support of his position is Section 32A-4-28(A) which states: "In proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child, including the likelihood of the child being adopted if parental rights are terminated." Even if we were to ignore the district court finding that it was "likely that the children will be adopted if parental rights are terminated[,]" Father's argument fails. Section 32A-4-28(A) makes the likelihood of adoption only one factor in the termination decision. The likelihood of adoption does not trump other considerations.

**{26}** Ultimately, "[t]he decision [to terminate parental rights] rests within the judicial discretion of the [district] court." *Wasson v. Wasson*, 1978-NMCA-092, ¶ 14, 92 N.M. 162, 584 P.2d 713. Like with his first main argument, Father gives us no adequate basis to doubt the integrity of the district court's decision; therefore, we will not disturb it.

**CONCLUSION**

**{27}** We affirm.

**{28}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**